**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KYLE HANDLEY,

*Petitioner - Appellant*,

v.

SEAN MOORE,

*Respondent - Appellee*.

No. 24-499

D.C. No.
8:22-cv-01423-
MCS-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted March 7, 2025
Pasadena, California

Filed July 29, 2025

Before: Gabriel P. Sanchez and Holly A. Thomas, Circuit
Judges, and James Donato, District Judge.[*]

Opinion by Judge H.A. Thomas;
Dissent by Judge Donato

---

[*] The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of Kyle Handley's federal habeas petition challenging his conviction and sentence on two counts of kidnapping for ransom in violation of California Penal Code section 209(a).

Section 209(a) provides for a sentence of life without possibility of parole if a victim of the kidnapping "suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death." The statute otherwise provides for a sentence of life with the possibility of parole. The information filed in Handley's case did not specifically allege that his victims suffered bodily harm or were confined in a manner that exposed them to a substantial likelihood of death. But during trial, Handley consented to jury instructions and a verdict form requiring special findings on those allegations and, following conviction, the state trial court sentenced him to life without parole.

On direct appeal, the California Court of Appeal rejected Handley's claim that the jury's findings on those special allegations, as well as his sentence, must be reversed because he was never formally charged with those allegations. The state court held that the Constitution does not require an information to charge punishment-enhancing facts—facts that serve only to increase the prescribed punishment to which a defendant is exposed. In the alternative, the state

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court held that Handley was afforded constitutionally sufficient notice of the special allegations through informal amendment of the information because he received notice of and consented to those allegations during a jury instruction conference at trial.

Handley's federal habeas petition alleged the denial of his Sixth Amendment right to be informed of the nature and cause of the accusation. He argued that he lacked adequate notice of the special allegations because they were omitted from the written information. The district court denied the petition.

The panel held that at the time of the California Court of Appeal's decision, it was not clearly established that the Sixth Amendment requires state charging documents to allege punishment-enhancing facts such as the special allegations at issue here. Nor was it clearly established that the notice required by the Sixth Amendment must be provided by the written information itself and that it cannot be provided through informal amendment of the information. The record accordingly does not support Handley's contention that the state court's decision was "contrary to" clearly established federal law as required for relief under 28 U.S.C. § 2254(d)(1).

The panel rejected Handley's contention that the state court's factual findings regarding informal amendment of the information were objectively unreasonable under 28 U.S.C. § 2254(d)(2). The state court reasonably found that Handley received notice of and consented to the special allegations during the jury instruction conference.

The panel also rejected Handley's contention that the state court's decision was "contrary to" clearly established federal law because he was never expressly informed that the

special allegations exposed him to a sentence of life without parole. Handley was informed of the special allegations, and section 209(a) itself states that the punishment triggered by a jury's true findings on those allegations is life without the possibility of parole.

District Judge Donato dissented. He wrote that § 2254(d)(1) is satisfied because the California Court of Appeal's core conclusion—that section 209(a) may properly be understood to state a single offense for purposes of the Sixth Amendment—was the fruit of an objectively unreasonable application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). He wrote that the California Court of Appeal also unreasonably applied Supreme Court precedent when it determined that Handley was given constitutionally adequate notice of the aggravated kidnapping for ransom charge in a whirlwind of jury instruction conferences at the tail end of his prosecution. Judge Donato would reverse and remand with instructions to issue a conditional writ of habeas corpus directing vacatur unless Handley is retried within 60 days.

**COUNSEL**

Cliff Gardner (argued) and Daniel J. Buffington, Law Offices of Cliff Gardner, Berkeley, California, for Petitioner-Appellant.

Warren J. Williams (argued), Deputy Assistant Attorney General, Division of Medi-Cal Fraud and Elder Abuse; Christopher P. Beesley, Supervising Deputy Attorney General; Charles C. Ragland, Senior Assistant Attorney

General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

## OPINION

H.A. THOMAS, Circuit Judge:

Kyle Handley was charged with two counts of kidnapping for ransom in violation of California Penal Code section 209(a). Section 209(a) provides for a sentence of life without possibility of parole if a victim of the kidnapping "suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death." Cal. Penal Code § 209(a) (2012).[1] The statute otherwise provides for a sentence of life with the possibility of parole. *Id.* The information filed in Handley's case did not specifically allege that his victims suffered bodily harm or were confined in a manner that exposed them to a substantial likelihood of death. But during trial, Handley consented to jury instructions and a verdict form requiring special findings on those allegations and, following conviction, the state trial court sentenced him to life without parole.

On direct appeal, the California Court of Appeal rejected Handley's claim that the jury's findings on those special allegations, as well as his sentence, must be reversed because he was never formally charged with those allegations.

---

[1] We rely on the version of the California Penal Code in effect when the crimes were committed.

*People v. Handley* (*Handley II*), No. G056608, 2021 WL 1138353, at *4–12 (Cal. Ct. App. Mar. 25, 2021). The state court held that the Constitution does not require an information to charge punishment-enhancing facts—facts that serve only to increase the prescribed punishment to which a defendant is exposed. *Id.* at *5–9. In the alternative, the state court held that Handley was afforded constitutionally sufficient notice of the special allegations through informal amendment of the information because he received notice of and consented to those allegations during a jury instruction conference that took place at trial. *Id.* at *9–12.

Handley subsequently filed a federal habeas petition alleging the denial of his Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. He argues that he lacked adequate notice of the special allegations because they were omitted from the written information. The district court denied Handley's habeas petition. We now affirm.

At the time of the California Court of Appeal's decision, it was not clearly established that the Sixth Amendment requires state charging documents to allege punishment-enhancing facts such as the special allegations at issue here. Nor was it clearly established that the notice required by the Sixth Amendment must be provided by the written information itself and that it cannot be provided through informal amendment of the information. The record accordingly does not support Handley's contention that the state court's decision was "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1). We also reject Handley's contention that the state court's factual findings regarding informal amendment of the information were objectively unreasonable under § 2254(d)(2). The state court

reasonably found that Handley received notice of and consented to the special allegations during the jury instruction conference. Finally, we reject Handley's contention that the state court's decision was "contrary to" clearly established federal law because he was never expressly informed that the special allegations exposed him to a sentence of life without parole. Handley was informed of the special allegations, and section 209(a) itself states that the punishment triggered by a jury's true findings on those allegations is life without the possibility of parole. Handley does not point to any Supreme Court decision requiring more explicit notice of the prescribed punishment.

## I

In 2012, Michael S. and Mary B. were asleep in their Newport Beach, California, home when they were awakened at gunpoint, tied up, gagged, and blindfolded by three intruders. *Handley II*, 2021 WL 1138353, at \*1–2. The men demanded $1 million from Michael, and when he told them he did not have that kind of money, they carried him and Mary to a van outside and drove to the Mojave Desert, where the men believed Michael had buried cash. *Id.* at \*2. Along the way, one man drove the van while the other two stomped Michael with their boots, beat him with a rubber hose, shocked him with a taser, and burned him with a blowtorch. *Id.* "All told, the tasering, burning and beating went on for about two and a half hours before the van finally pulled over on a deserted road out near Rosamond." *Id.* "Michael and Mary were still tied up and blindfolded when the men carried them out of the van and put them down on the desert sand." *Id.* Eventually, the men gave up on finding the money, cut off Michael's penis, doused him with bleach, and drove off in the van, leaving Michael and Mary behind. *Id.* Michael

and Mary survived, and the police ultimately identified Handley as one of the kidnappers. *Id.* at *2–3.

The Orange County District Attorney filed a five-count criminal complaint against Handley in October 2012. The complaint charged Handley with two counts of kidnapping for ransom, a form of aggravated kidnapping, in violation of California Penal Code section 209(a); one count of aggravated mayhem, in violation of Penal Code section 205; one count of torture, in violation of Penal Code section 206; and one count of first-degree residential burglary, in violation of Penal Code sections 459 and 460(a). In connection with the torture count, the complaint also charged an enhancement under Penal Code section 12022.7(a), alleging that Handley "personally inflicted great bodily injury" on Michael.[2]

In October 2014, the prosecution filed a motion to consolidate Handley's case with the case against another defendant. The prosecution noted in its moving papers that "[t]he penalty if convicted is life without parole."

In March 2015, the prosecution filed an information against Handley and a codefendant.[3] The information, which

---

[2] Under section 12022.7(a), "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Cal. Penal Code § 12022.7(a) (2012).

[3] The California Constitution "authorizes prosecution of a felony by information 'after examination and commitment by a magistrate.'" 4 B.E. Witkin, *Cal. Crim. Law*, *Pretrial* § 171 (5th ed. 2024) (quoting Cal. Const. art. I, § 14). "Before an information is filed there must be a preliminary examination of the case against the defendant and an order

superseded the October 2012 complaint, included the same charges as the complaint, including two counts of kidnapping for ransom under Penal Code section 209(a).[4] At the time, section 209(a) stated as follows:

> Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, or any person who aids or abets any such act, is guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death, or shall be punished by imprisonment in the

---

holding the defendant to answer. The proceeding (commonly called a 'preliminary hearing') must be commenced by a written complaint." *Id.* "In contrast, a charge of a felony by indictment may only be made after an inquiry and determination by a grand jury." *Id.* "[A] preliminary hearing is not required where the defendant has been indicted." *People v. Superior Ct. (Persons)*, 128 Cal. Rptr. 314, 315 (Ct. App. 1976). "[A] district attorney is free to use either of the two vehicles"—indictment or information—"to bring a defendant to trial." *People v. Schlosser*, 144 Cal. Rptr. 57, 58 (Ct. App. 1978).

[4] Only the first four counts ultimately went to the jury. The prosecution dropped the burglary count during voir dire and the section 12022.7(a) enhancement during trial.

state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm.

Cal. Penal Code § 209(a) (2012).

The penalties under this provision depend on the circumstances of the offense. The baseline penalty for violating section 209(a) is "imprisonment in the state prison for life with the possibility of parole." *Id.* But a penalty of "life without possibility of parole" applies when a victim of the kidnapping "suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death." *Id.* In Handley's case, neither the complaint nor the information specifically alleged that either victim suffered bodily harm or was intentionally confined in a manner exposing that person to a substantial likelihood of death. Nor did the complaint or information indicate whether the prosecution was seeking a sentence of life without possibility of parole.[5]

---

[5] The information alleged:

COUNT 1: On or about October 02, 2012, in violation of Section 209(a) of the Penal Code (KIDNAPPING FOR RANSOM), a FELONY, KYLE SHIRAKAWA HANDLEY and HOSSEIN NAYERI, who had the intent to hold and detain, did unlawfully seize, confine, inveigle, entice, decoy, abduct, conceal, kidnap, carry away, hold, and detain JOHN DOE for ransom, reward, extortion, and to exact from another person money and other valuable things.

COUNT 2: On or about October 02, 2012, in violation of Section 209(a) of the Penal Code (KIDNAPPING FOR RANSOM), a FELONY, KYLE SHIRAKAWA

Handley's separate trial began in December 2017. At trial, Handley "did not present any evidence in his defense, nor did he dispute the prosecution's portrayal of Michael and Mary as the victims of a brutal kidnapping scheme. Rather, he claimed there was insufficient evidence tying him to that scheme." *Handley II*, 2021 WL 1138353, at *4.

At the time of Handley's trial, California's pattern jury instruction for Penal Code section 209(a), CALCRIM No. 1202, required the following instruction to be given "[i]f the prosecution alleges that the kidnapping resulted in death or bodily harm, or exposed the victim to a substantial likelihood of death":

> If you find the defendant guilty of kidnapping for (ransom [,]/ [or] reward[,]/ [or] extortion), you must then decide whether the People have proved the additional allegation that the defendant (caused the kidnapped person to (die/suffer bodily harm)/ [or] intentionally confined the kidnapped person in a way that created a substantial likelihood of death).

Jud. Council of Cal., Crim. Jury Instructions (CALCRIM), No. 1202, at 953–54 (2017) (brackets in original).

During a jury instruction conference held on December 21, 2017, the state trial court asked defense counsel whether he had any objection to the court instructing the jury on

---

HANDLEY and HOSSEIN NAYERI, who had the intent to hold and detain, did unlawfully seize, confine, inveigle, entice, decoy, abduct, conceal, kidnap, carry away, hold, and detain JANE DOE for ransom, reward, extortion, and to exact from another person money and other valuable things.

California's pattern jury instruction for Penal Code section 209(a). Defense counsel stated that he had no objection. Counsel "also informed the court he was not requesting instructions on any lesser included offenses to aggravated kidnapping. Since his theory of the case was that [Handley] was not actually involved in the alleged kidnappings, he felt there was no need for any such instructions, and [Handley] said he agreed with that decision." *Handley II*, 2021 WL 1138353, at *5.

At a second conference held on January 3, 2018, the trial court informed the parties that it had prepared jury instructions on the section 209(a) counts—Counts 1 and 2— "asking the jury to make findings on both the substantive crime and then whether or not that crime, if committed, great bodily injury was inflicted." The court stated that, "[t]he way that the CALCRIMS read, it should be a special finding, but it's not technically a sentencing enhancement and the like."**[6]**

---

[6] The court misspoke by referring to "great bodily injury" rather than "bodily harm." While enhancement under section 12022.7(a) requires "great bodily injury," special allegations under section 209(a) require either "bodily harm" or intentional confinement in a manner which exposes the victim to a substantial likelihood of death. Cal. Penal Code § 209(a) (2012).

By contrast, the court did not misspeak by pointing out that special allegations under section 209(a) are not sentencing enhancements. *See People v. Jones*, 213 P.3d 997, 1004 (Cal. 2009) ("Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself*, when the jury has determined that the defendant has satisfied the conditions specified in the statute." (alteration in original) (quoting *People v. Jefferson*, 980 P.2d 441, 451 (Cal. 1999))); 3 B.E. Witkin, *Cal. Crim. L., Punishment* § 393 (5th ed. 2024) ("An enhancement is an additional term of imprisonment added to the base

After informing the parties that it was "preparing to instruct consistent with what I have just said," the court asked, "Is there any objection by the defense? There was not when we went over jury instructions." Defense counsel responded that there was no objection.

One of the prosecutors then clarified that the prosecution was seeking different special findings with respect to the two victims—bodily harm with respect to Michael and confinement exposing the victim to a substantial likelihood of death with respect to Mary. The court asked defense counsel whether he had any objection to the prosecution proceeding under that theory, and defense counsel stated that he had no objection.

"During closing arguments, the prosecutor argued there was ample evidence to support those allegations, and defense counsel did not disagree. Defense counsel instead took the position that [Handley] had nothing to do with the kidnapping plan that led to Michael suffering bodily harm and Mary being exposed to a substantial likelihood of death." *Id.* at *6. Defense counsel "voiced no objection when the prosecutor argued those allegations." *Id.* at *11.

On January 4, 2018, the jury returned verdicts of guilty on all four counts, including the two kidnapping counts under section 209(a). On Count 1, the jury also made a special finding that Michael "suffered bodily harm" during the course of the kidnapping. On Count 2, the jury made a special finding that Mary "was intentionally confined in a manner that exposed her to a substantial likelihood of death."

---

term. . . . An aggravating circumstance that is relied on to impose the upper term is not an enhancement. Rather, it is a factor that is used in determining the base term to which enhancements are added.").

Defense counsel voiced no objection to these special findings. *Id.*

As noted by the state court, in his sentencing brief,

> defense counsel fully acknowledged . . . that [Handley] was facing a potential sentence of LWOP based on those findings. Defense counsel made the argument that imposition of an LWOP sentence would be cruel and unusual under the Eighth Amendment, but— to his credit—he never so much as suggested that an LWOP sentence was improper on due process grounds for lack of notice. Nor did he ever suggest that [Handley's] plea decisions or trial strategy were impacted by the manner in which the case was charged. There would have been no support for either argument.

*Id.*[7] The trial court rejected Handley's cruel-and-unusual-punishment argument and sentenced Handley to life imprisonment without the possibility of parole on each of the kidnapping counts.

On direct appeal, Handley argued for the first time that the jury's findings on the special allegations and his life-without-parole sentence violated his constitutional right to notice of the charges against him because the special allegations were not charged in the written information. In January 2020, the California Court of Appeal rejected that claim. *See People v. Handley* (*Handley I*), No. G056608,

---

[7] Handley actually claimed cruel and unusual punishment under the California Constitution, not the Eighth Amendment. The distinction has no bearing on the issues presented in this appeal.

2020 WL 58048 (Cal. Ct. App. Jan. 6, 2020). The California Supreme Court subsequently granted review of that decision and returned the case to the court of appeal with directions to vacate *Handley I* and reconsider Handley's notice claim in light of *People v. Anderson*, 470 P.3d 2 (Cal. 2020). In March 2021, the court of appeal issued a superseding decision rejecting Handley's notice claim on two independent grounds. *Handley II*, 2021 WL 1138353, at *4–12.

First, the state court concluded that Handley received constitutionally sufficient notice of the special allegations and his exposure to a sentence of life without possibility of parole because the March 2015 information cited Penal Code section 209(a). *Id.* at *8. The court concluded that this citation alone was sufficient to place Handley on notice of the charges because section 209(a) "plainly states that if the victim of an aggravated kidnapping dies, suffers bodily harm or is exposed to a substantial likelihood of death, the defendant must be sentenced to LWOP." *Id.*

In reaching this conclusion, the court relied on the California Supreme Court's decision in *People v. Britton*, 56 P.2d 494 (Cal. 1936). *Id.* at *8–9. In that case, which involved an earlier version of section 209, the defendant argued that the trial court was "without authority to sentence him 'without possibility of parole' because the indictment contains no allegation that in the course of the commission of the crime of kidnaping for the purpose of robbery to which he entered his plea, the victim thereof suffered 'bodily harm.'" *People v. Britton*, 56 P.2d at 495. The state supreme court disagreed:

> Section 209 of the Penal Code, as amended,
> for the purpose of this case, defines but one

criminal act or offense, viz., kidnaping for purpose of robbery, for which any one of several punishments may be imposed, depending entirely upon the circumstances surrounding its commission. A charge in the language of the statute that the accused had kidnaped his victim for the purpose of robbery in violation of the statute apprises the accused of what he will be expected to meet and of the several punishments prescribed therefor, any one of which, upon conviction, may be imposed upon him. The indictment here involved charged the offense in the language of the statute and referred thereto.

It is well settled in this state that an indictment or information need not allege the particular mode or means employed in the commission of an offense, except when of the essence thereof. In other words, particulars as to manner, means, place, or circumstances need not in general be added to the statutory definition. The indictment or information need only charge the essential elements of the statutory offense. It then fairly apprises the defendant of what he is to meet at the trial.

So far as the present case is concerned, the essence of the offense denounced in section 209, as amended, as a felony is the seizing, confining, kidnaping, etc., of the victim for the purpose of robbery. If upon the trial of such offense, or upon plea of guilty, it develops that the victim suffered bodily harm, the jury or the court, as the case may

> be, may in its discretion fix the punishment at death or life imprisonment without possibility of parole or, should the victim not have suffered bodily harm, life imprisonment with possibility of parole is prescribed as punishment.

*Id.* at 496 (citations omitted).

After noting that *People v. Britton* was controlling in Handley's case, the court of appeal rejected Handley's contention that *People v. Britton* had been "overruled sub silentio by the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny." *Handley II*, 2021 WL 1138353, at *8. Relying on post-*Apprendi* California Supreme Court decisions, the court reasoned that "*Apprendi* was not a notice case" but instead "considered whether the rights to trial by jury and proof beyond a reasonable doubt extend to facts that can be used to enhance a defendant's punishment above the statutory maximum." *Id.* at *8–9 (citing *People v. Contreras*, 314 P.3d 450, 470 (Cal. 2013); *People v. Houston*, 281 P.3d 799, 829 (Cal. 2012); *People v. Famalaro*, 253 P.3d 1185, 1211 (Cal. 2011)).

Second, even assuming *People v. Britton* were not controlling, the court of appeal concluded that reversal was unwarranted because Handley received constitutionally sufficient notice of the special allegations—and his potential sentence of life without parole—through informal amendment of the information. *Id.* at *9. The court explained that under California's informal amendment doctrine, "due process will be deemed satisfied if the record, *considered as whole*, shows the defendant received adequate notice of the prosecution's intent to charge him with a particular crime or

enhancement, and the defendant, by word or conduct, acquiesced to the charge." *Id.* at *10. The court concluded that Handley received adequate notice of the special allegations at the January 3 jury instruction conference and that Handley consented to those charges when the trial court asked defense counsel whether he objected to the allegations and defense counsel stated repeatedly that he did not. *Id.* at *11. The court of appeal therefore concluded that "the conditions for an informal amendment of the charges have been met" and that Handley "was afforded sufficient notice of the charges." *Id.*

The court of appeal acknowledged that Handley "was never expressly informed he could be sentenced to LWOP if the jury found the special allegations true." *Id.* at *12. But the court concluded that Handley received adequate notice because "once the aggravated kidnapping charges were informally amended to include allegations of bodily harm and substantial likelihood of death, [Handley] was sufficiently apprised of this possibility." *Id.* The court affirmed the judgment, *id.* at *17, and the California Supreme Court denied review without comment.

Handley subsequently filed a federal habeas petition under 28 U.S.C. § 2254, arguing that his kidnapping convictions and sentences violated his Sixth Amendment right to notice of the charges against him. The district court denied the petition. The court concluded that habeas relief was barred under § 2254(d) because clearly established federal law did not require the special allegations to be charged in the information. In the alternative, assuming arguendo that § 2254(d) was satisfied and that Handley's Sixth Amendment rights were violated, the court concluded that Handley failed to "demonstrate[] that any constitutional error was structural or resulted in any prejudice to his

defense" under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The district court dismissed Handley's petition with prejudice. Handley timely appealed.

## II

"We review de novo a district court's decision to grant or deny a writ of habeas corpus." *Kipp v. Davis*, 971 F.3d 939, 948 (9th Cir. 2020). Because Handley's petition was filed after April 24, 1996, our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Marks v. Davis*, 106 F.4th 941, 948 (9th Cir. 2024). Under AEDPA, federal habeas relief may not be granted unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A petitioner who satisfies § 2254(d)(1) or (d)(2) is entitled to de novo review of the merits of the claim." *Marks*, 106 F.4th at 950.

"Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71–72. "When th[e Supreme] Court relies on a legal rule or principle to decide a case, that principle is

a 'holding' of the Court for purposes of AEDPA." *Andrew v. White*, 604 U.S.___, 145 S. Ct. 75, 81 (2025) (per curiam).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (first alteration added) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). "This is a daunting standard—one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other*

*grounds as stated in Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

When the last state court decision adjudicating a claim is unreasoned, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "It should then presume that the unexplained decision adopted the same reasoning," although "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds." *Id.*

## III

We now address whether the California Court of Appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

## A

We begin with Handley's contention that the California Court of Appeal's decision, and the California Supreme Court's decision in *People v. Britton* upon which the California Court of Appeal relied, were "contrary to" a series of nineteenth-century Supreme Court cases requiring criminal pleadings to allege the essential elements of the offense charged.

Handley relies on the Supreme Court's decisions in *Blitz v. United States*, 153 U.S. 308 (1894), *United States v. Britton*, 107 U.S. 655 (1883), *United States v. Carll*, 105 U.S. 611 (1881), and *United States v. Simmons*, 96 U.S. 360

(1877), contending that these decisions clearly established the principle that the Sixth Amendment requires state charging documents to allege facts that increase the prescribed range of penalties to which a defendant is exposed (which we refer to as "punishment-enhancing facts"). He argues that:

> (1) these cases adopted a common law rule that "where a factual element of a criminal charge exposes a defendant to punishment not available in the absence of that fact, the fact must be pled in the charging document in order to give proper notice";

> (2) "the notice provisions of the Sixth Amendment codified th[is] common law [rule]"; and

> (3) "the Sixth Amendment applies to the states."

It is true that the decisions Handley cites, along with others from the same era, require the essential elements of an offense to be charged in a federal indictment. *See Blitz*, 153 U.S. at 315 (holding that an indictment must "set forth all the elements necessary to constitute the offense intended to be punished" (quoting *Carll*, 105 U.S. at 612)); *United States v. Britton*, 107 U.S. at 669 ("The intent to injure and defraud is an essential ingredient to every offense specified in the section, and the failure to aver the intent is a fatal defect in the counts in which it occurs."); *Simmons*, 96 U.S. at 362–63 (deeming defective an indictment that failed to allege the elements of the offense with sufficient certainty); *see also United States v. Hess*, 124 U.S. 483, 486 (1888) ("The general, and with few exceptions, of which the present

case is not one, the universal, rule, on this subject, is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading.").[8]

We also agree with Handley that the Supreme Court traced these pleading requirements to the common law. *See, e.g.*, *Simmons*, 96 U.S. at 362 (citing the principle, "fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence, and plead the judgment as a bar to any subsequent prosecution for the same offence"); *see also* 5 Wayne R. LaFave, *Criminal Procedure* § 19.3(b) (4th ed. 2024) (characterizing the requirement that a pleading allege each essential element of the offense charged as "a cornerstone of common law pleading").

Third, we will assume without deciding that the Sixth Amendment codified this common law principle. In *United States v. Cruikshank*, 92 U.S. 542 (1875), the Supreme Court held that the Sixth Amendment requires an indictment to set forth "every ingredient of which the offence is composed."

---

[8] "[T]hese basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure." *Russell v. United States*, 369 U.S. 749, 765–66 (1962); *see* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.").

*Id.* at 558 (quoting *United States v. Cook*, 84 U.S. (17 Wall.) 168, 174 (1872)). The Court stated:

> In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amend. VI. In *United States v. Mills*, 7 Pet. 142, this was construed to mean, that the indictment must set forth the offence 'with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged;' and in *United States v. Cook*, 17 Wall. 174, that 'every ingredient of which the offence is composed must be accurately and clearly alleged.'

*Id.* at 557–58.[9]

---

[9] The parties have not cited *Cruikshank*, and some have questioned its reasoning. *See* LaFave, *supra*, § 19.3(b) ("[V]arious courts have suggested that the pleading of all essential elements is mandated by the notice requirement of the Sixth Amendment, although that is a dubious proposition." (footnote omitted)). But *Cruikshank* relies explicitly on the Sixth Amendment, and the Supreme Court's more recent decision in *Russell*—which the parties also do not cite—supports the proposition that the Sixth Amendment incorporates these common law principles. In *Russell*, a federal indictment charged the defendants with violating 2 U.S.C. § 192, which made it unlawful for a congressional witness to "refuse[] to answer any question pertinent to the question under inquiry." 369 U.S. at 752 n.2. The Court held that the indictment was insufficiently specific because it "failed to identify the subject under congressional subcommittee inquiry at the time the witness was interrogated." *Id.* at 752. In reaching this conclusion, the Court relied on both the grand jury requirements of the Fifth Amendment and "the guaranty of the Sixth

Finally, we agree with Handley that the notice requirement of the Sixth Amendment applies to the states. *See Gray v. Raines*, 662 F.2d 569, 571 (9th Cir. 1981) ("The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is therefore fully applicable to the states." (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."))).

We are not persuaded, however, by Handley's contention that these nineteenth-century decisions clearly established that punishment-enhancing facts—facts serving solely to increase the prescribed range of penalties to which a defendant is exposed—must be alleged in a charging document. In *Blitz*, *Hess*, *United States v. Britton*, *Carll*, *Simmons*, and *Cruikshank*, the indictment omitted—or failed to allege with sufficient certainty—a basic element required for the commission of the offense. None of these cases involved the omission of a fact going solely to punishment. These decisions, therefore, cannot have clearly established the principle that punishment-enhancing facts must be charged in an indictment or information.

---

Amendment that 'In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation.'" *Id.* at 751 (alteration in original) (quoting U.S. Const. amend. VI). Given *Cruikshank* and *Russell*, we assume for purposes of our analysis that the Sixth Amendment incorporates the common law principle that an indictment must charge the essential elements of the crime.

Handley argues otherwise, relying on *United States v. Britton*, but that decision does not bear the weight Handley places on it. In *United States v. Britton*, the defendant was charged in a federal indictment with violating section 5209 of the Revised Statutes of the United States, which made it a crime for the president of a national banking association to willfully misapply funds of the association. 107 U.S. at 655–56. "[T]he indictment charged that the defendant being president of the association, paid to a certain person unknown the sum of $2,400 of the moneys of the association in the purchase of 40 shares of its capital stock, which stock, so purchased, was held by the defendant in trust for the use of the association." *Id.* at 666. The Court held that, "to constitute the offense of willful misapplication, there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged." *Id.* at 666–67. "This essential element of the offense" was not only "not averred in the counts under consideration" but also

> negatived by the averment that the shares purchased by the defendant w[ere] held by him in trust for the use of the association, and there is no averment of a conversion by the defendant to his own use or the use of any other person of the funds used in the purchase of the shares. The counts, therefore, charge maladministration of the affairs of the bank, rather than criminal misapplication of its funds.

*Id.* at 667.

Handley argues that this decision stands for the proposition that punishment-enhancing facts must be alleged in a charging document because the fact omitted from the indictment in the case "went only to the punishment which could be imposed." Handley's premise is incorrect. The fact omitted from the indictment in *United States v. Britton*—willful misapplication through conversion—was a basic element required for the commission of the offense. Without conversion, there was no violation of the statute at all. Here, by contrast, Handley could be convicted under section 209(a) regardless of whether the prosecution could prove that his victims suffered bodily harm or were confined in a manner exposing them to a substantial likelihood of death. *United States v. Britton*, therefore, does not speak to the issue presented in this case—whether punishment-enhancing facts must be alleged in a charging instrument.[10]

To summarize, we assume without deciding that *Blitz*, *United States v. Britton*, *Carll*, *Simmons*, and similar cases, read in light of *Cruikshank* and *Russell*, clearly established that the Sixth Amendment requires the essential elements of a crime to be alleged in a charging document. These cases do not clearly establish, however, that punishment-enhancing facts are among the essential elements that must be charged. Accordingly, we reject Handley's contention that *People v. Britton*, and the California Court of Appeal decision in Handley's case relying on *People v. Britton*, were

---

[10] It is true that, as Handley emphasizes, conversion was relevant to the punishment in *United States v. Britton*, as in the absence of proving conversion the government would only have been able to charge the defendant with violating section 5239, maladministration of the affairs of a bank, which carried a lesser penalty than section 5209. But this does not make conversion a punishment-enhancing fact, which is a fact relevant only to punishment.

"contrary to" clearly established federal law under these nineteenth-century decisions.[11]

B

We next address Handley's contention that the California Court of Appeal's decision was "contrary to" more recent Supreme Court decisions stating that any fact (other than a prior conviction) that increases the prescribed range of penalties to which a criminal defendant is exposed must be charged in an indictment.

In *Jones v. United States*, 526 U.S. 227 (1999), a federal indictment charged the defendant with carjacking, in violation of 18 U.S.C. § 2119. *Id.* at 230. Section 2119(1) prescribes a maximum sentence of 15 years; § 2119(2), which applies when serious bodily injury results from the offense, prescribes a maximum sentence of 25 years; and § 2119(3), which applies when death results from the offense, imposes a maximum sentence of life. *Id.* The indictment and the jury instructions made no mention of the statute's numbered subsections or serious bodily injury, but the district court imposed a 25-year sentence under subsection (2) after finding by a preponderance of the evidence that serious bodily injury resulted from the offense. *Id.* at 230–31. After noting that a different construction would raise serious constitutional questions under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, the Supreme

---

[11] We agree with our dissenting colleague that punishment-enhancing facts are "elements" under *Apprendi* and *Alleyne*. But nothing in the nineteenth-century cases upon which Handley relies establishes that the Sixth Amendment requires these *Apprendi*-type elements to be alleged in state charging documents. Nor, as we explain below, do the *Apprendi* line of decisions squarely address this question.

Court "constru[ed] § 2119 as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252. A footnote in *Jones* stated that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6.

In *Apprendi*, a New Jersey indictment charged the defendant with several state criminal offenses but made no mention of the state's hate crimes statute or the defendant's allegedly racially-motivated purpose in committing the crimes. 530 U.S. at 469. After the defendant pleaded guilty, the state trial court applied the hate crimes statute, found by a preponderance of the evidence that the defendant acted with a racially-motivated purpose, and sentenced the defendant accordingly. *Id.* at 469–71. On review, the Supreme Court quoted *Jones*'s statement that "'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt'" and stated that "[t]he Fourteenth Amendment commands the same answer in this case involving a state statute." *Id.* at 476 (quoting *Jones*, 526 U.S. at 243 n.6). The Court noted, however, that the petitioner "has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Id.* at 477 n.3. The Court ultimately held only that

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The holding made no reference to pleading requirements.

In *United States v. Cotton*, 535 U.S. 625 (2002), the Court quoted *Apprendi*'s holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *id.* at 627 (quoting *Apprendi*, 530 U.S. at 490), before adding that "[i]n federal prosecutions, such facts must also be charged in the indictment," *id.* (citing *Apprendi*, 530 U.S. at 476).**[12]**

In *Blakely v. Washington*, 542 U.S. 296 (2004), which involved a state prosecution, the defendant pleaded guilty to kidnapping. *Id.* at 298–99. At sentencing, the trial court imposed an exceptional sentence, beyond the standard maximum, based on a judicial finding that the defendant acted with deliberate cruelty—"a statutorily enumerated ground for departure in domestic-violence cases." *Id.* at 300. Applying *Apprendi*, the Court reversed the defendant's sentence on the ground that the fact of deliberate cruelty

---

[12] "While the Supreme Court has not been entirely consistent in explaining the exact grounding for requiring that such *Apprendi*-elements be alleged in federal indictments, that requirement generally is assumed to rest on the grand jury clause of the Fifth Amendment." LaFave, *supra*, § 19.3(b) (footnote omitted). The grand jury clause does not apply to state prosecutions. *See Hurtado v. California*, 110 U.S. 516, 538 (1884); *Gautt v. Lewis*, 489 F.3d 993, 1003 n.10 (9th Cir. 2007) ("[O]ne's Fifth Amendment right to presentment or indictment by a grand jury . . . has not been incorporated into the Fourteenth Amendment so as to apply against the states.").

should have been submitted to a jury. *Id.* at 313–14. In reaching this conclusion, the Court cited the "longstanding tenet[] of common-law criminal jurisprudence" that "'an accusation which lacks any particular fact which the law makes essential to the punishment is . . . no accusation within the requirements of the common law, and it is no accusation in reason.'" *Id.* at 301–02 (quoting 1 J. Bishop, *Criminal Procedure* § 87 (2d ed. 1872)).

In *Southern Union Co. v. United States*, 567 U.S. 343 (2012), the Court held that the "rule of *Apprendi* applies to the imposition of criminal fines." *Id.* at 360. The federal indictment in the case charged the defendant with violations of the Resource Conservation and Recovery Act of 1976, which authorizes a criminal fine for each day of violation. *Id.* at 346–47. After the jury convicted the defendant, "the District Court made factual findings that increased both the 'potential and actual' fine the court imposed." *Id.* at 352. Applying *Apprendi*, the Court held that the Sixth Amendment right of jury trial requires that "juries . . . determine facts that set a fine's maximum amount." *Id.* at 356. In reaching this conclusion, the Court cited the common law principle that "the indictment must, in order to inform the court what punishment to inflict, contain an averment of every particular thing which enters into the punishment." *Id.* (quoting 1 J. Bishop, *Criminal Procedure* § 540 (2d ed. 1872)).

In *Alleyne v. United States*, 570 U.S. 99 (2013), a federal indictment charged the defendant with using or carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 103. Neither the indictment nor the verdict form mentioned § 924(c)(1)(A)(ii), which increases the statute's minimum sentence to seven years' imprisonment if the firearm is brandished, and the jury,

which convicted the defendant, made no finding that the defendant brandished a weapon. *Id.* at 103–04. The district court, however, found that the defendant brandished a weapon and applied the seven-year statutory minimum. *Id.* at 104. Applying *Apprendi* and the Sixth Amendment right to jury trial, the Court reversed, holding that "facts that increase mandatory minimum sentences must be submitted to the jury." *Id.* at 116. In reaching this conclusion, the Court cited the common law principle that "if 'a statute prescribes a *particular punishment* to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations,' then those special circumstances must be specified in the indictment." *Id.* at 112 (quoting 1 J. Bishop, *Criminal Procedure* § 598 (2d ed. 1872)).

The question presented here is whether the foregoing decisions clearly established that the Sixth Amendment requires punishment-enhancing facts to be alleged in a state charging instrument. As a threshold matter, Handley concedes that these decisions did not hold that such facts must be charged in a state criminal pleading; he states that "these consistent descriptions of the notice and pleading requirements of the Sixth Amendment were not holdings of the Supreme Court but were, instead, dicta." Quoting *Frye v. Broomfield*, 115 F.4th 1155, 1163 (9th Cir. 2024), however, he contends that "habeas relief can be granted based on 'ancient' and 'deeply embedded' legal principles recognized by the Supreme Court even in the absence of a specific holding."

The issue we confronted in *Frye* was whether it was clearly established in 2001 that the Constitution forbids the unjustified use of visible shackles during the guilt phase of a criminal trial. *Id.* at 1158. It was not until 2005 that the Supreme Court squarely held that "the Fifth and Fourteenth

Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). We nevertheless held in *Frye* that "[t]he prohibition on routine guilt-phase shackling was . . . 'clearly established Federal law' within the meaning of § 2254(d)(1) well before the state court's decision in 2001." *Frye*, 115 F.4th at 1163. In arriving at this conclusion, we relied on pre-2001 Supreme Court decisions plainly stating that unjustified shackling was prohibited. *See Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986) ("[S]hackling[] should be permitted only where justified by an essential state interest specific to each trial."); *Illinois v. Allen*, 397 U.S. 337, 344 (1970) ("[N]o person should be tried while shackled and gagged except as a last resort."). We also looked at *Deck*'s characterization of previous Supreme Court cases as clearly establishing the right in question. *See Deck*, 544 U.S. at 626 ("We first consider whether, as a general matter, the Constitution permits a State to use visible shackles routinely in the guilt phase of a criminal trial. The answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase . . . ."). Finally, we relied on the fact that "[f]ollowing *Allen* and *Holbrook*, the courts of appeals, including ours, widely applied 'these statements as setting forth a constitutional standard' barring unjustified shackling." *Frye*, 115 F.4th at 1164 (quoting *Deck*, 544 U.S. at 628).

We are not persuaded that similar reasoning applies here. First, in *Frye* there was a Supreme Court decision—*Deck*—that looked back at earlier precedents and characterized them as being "clear" that it was "forbidden" to use visible shackles absent special need. *Deck*, 544 U.S. at 626. Here,

by contrast, there is no Supreme Court decision looking back at the *Apprendi* line of cases and characterizing them as clearly requiring state charging documents to allege punishment-enhancing facts.

Second, the *Apprendi*-era decisions upon which Handley relies do not clearly state that the notice requirement of the Sixth Amendment requires state charging documents to allege punishment-enhancing facts. *Jones* involved a federal prosecution rather than a state prosecution. *Apprendi* expressly declined to "address the indictment question." 530 U.S. at 477 n.3. *Blakely*, *Southern Union*, and *Alleyne* discussed common law principles requiring charging documents to allege each element of an offense, including punishment-enhancing facts, but none of those cases specifically stated that the Sixth Amendment notice requirement incorporates those common law principles.[13] *Cotton*, moreover, appears to have drawn a distinction between federal and state prosecutions and to have read

---

[13] The Court made clear in these cases that the Sixth Amendment right to jury trial incorporates certain common law principles. *See Southern Union*, 567 U.S. at 353 ("[T]he scope of the constitutional jury right must be informed by the historical role of the jury at common law." (quoting *Oregon v. Ice*, 555 U.S. 160, 170 (2009))); *Blakely*, 542 U.S. at 313 ("Our Constitution and the common-law traditions it entrenches . . . do not admit the contention that facts are better discovered by judicial inquisition than by adversarial testing before a jury."). But the Court has not squarely addressed whether, or to what extent, the Sixth Amendment notice requirement incorporates common law pleading requirements. *See Gautt*, 489 F.3d at 1004 n.11 (noting that "the Supreme Court has written relatively sparingly on a defendant's right to notice in the Sixth and Fourteenth Amendment contexts").

*Jones*'s discussion of pleading requirements as applying only to the former:

> In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*, at 490. In federal prosecutions, such facts must also be charged in the indictment. *Id.*, at 476 (quoting *Jones v. United States*, 526 U.S. 227, 243, n. 6 (1999)).

535 U.S. at 627.

Third, the federal circuits have not, to our knowledge, widely applied *Jones*, *Apprendi*, *Blakely*, *Southern Union*, and *Alleyne* as setting forth a Sixth Amendment standard requiring state charging documents to allege punishment-enhancing facts.[14]

---

[14] Nor have *state* courts construed the *Apprendi* line of authorities as establishing that the Sixth Amendment requires punishment-enhancing facts to be alleged in a state charging document:

> More than dozen state courts so far have addressed the question of whether the federal constitution requires a state pleading to allege an *Apprendi*-type element. Only a few appear to have concluded that there is such a requirement. The vast majority have directly held that there is no such requirement. Some have focused primarily on the Fifth Amendment's grand jury clause not being applicable to the states. Others have cited the need to take account of a possible Sixth [Amendment]

In sum, we reject Handley's contention that the *Apprendi* line of decisions clearly established that the Sixth Amendment requires punishment-enhancing facts to be alleged in state charging documents. The California Court of Appeal's decision was not "contrary to" clearly established federal law on this theory.[15]

In so holding, we emphasize that we have no occasion here to address the question whether Handley's understanding of the Sixth Amendment's notice requirement is correct. The question presented—and the one we answer—is whether, at the time of the state court's decision, Handley's proposed rule constituted "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In footnote 3 of *Apprendi* and in *Cotton*, the Court reserved the question whether the Constitution requires *Apprendi*-type elements to be alleged in state charging documents. AEDPA does not permit us to dispense habeas relief as if those reservations had not occurred. *Cf. Mitchell v. Esparza*, 540 U.S. 12, 17

---

> requirement of notice, but concluded that adequate notice can be provided without alleging the *Apprendi*-type element in the charging instrument.

LaFave, *supra*, § 19.3(b) (footnotes omitted).

[15] At oral argument, Handley invoked a recent Supreme Court decision holding that "[w]hen th[e Supreme] Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court for purposes of AEDPA." *Andrew*, 145 S. Ct. at 81. Handley, however, does not identify a Supreme Court decision relying on the principle that the Sixth Amendment requires punishment-enhancing facts to be alleged in charging documents. The closest case is *Jones*, but *Apprendi* declined to extend *Jones*'s pleading requirement to state prosecutions, 530 U.S. at 477 n.3, and *Cotton* appears to have limited *Jones*'s pleading requirement to federal prosecutions, 535 U.S. at 627.

(2003) (per curiam) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous.").

C

We consider Handley's alternative contention that the California Court of Appeal's decision was "contrary to" clearly established federal law because the state court—relying on California law allowing informal amendment of an information—looked beyond the written information to conclude that he received adequate notice of the special allegations.

Handley's argument is without merit. The Supreme Court has never held that a Sixth Amendment notice inquiry is limited to the written charging document. Handley points to our statement in *Gautt* that "for purposes of AEDPA's 'clearly established Federal law' requirement, it is 'clearly established' that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided." 489 F.3d at 1004. But *Gautt* did not hold that the inquiry is limited to the information, let alone that clearly established federal law embodies such a limitation. On the contrary, *Gautt* recognized that "[o]ur circuit has held that in certain circumstances—for example, when a defendant has argued that he received insufficient notice of a particular theory of the case—a court can examine sources other than the information for evidence that the defendant did receive adequate notice," *id.* at 1009, and *Gautt* "assume[d]—without deciding—that such sources can be parsed for evidence of notice to the defendant," *id.* at 1010.

Handley not only overreads *Gautt* but also disregards circuit authority expressly stating that the Sixth Amendment inquiry reaches beyond the written charging document. In *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1989), for example, we stated:

> This case does not involve a claim that adequate notice was provided by a source other than the primary charging document. An accused could be adequately notified of the nature and cause of the accusation by other means—for example, a complaint, an arrest warrant, or a bill of particulars. Similarly, it is possible that an accused could become apprised of the particular charges during the course of a preliminary hearing. Any or all of these sources—or perhaps others—might provide notice sufficient to meet the requirements of due process, although precise formal notice is certainly the most reliable way to comply with the Sixth Amendment. The Constitution itself speaks not of form, but of substance.

*Id.* at 1236 n.2 (citation omitted); *accord Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir. 1995) ("[A] defendant can be adequately notified of the nature and cause of the accusation against him by means other than the charging document."). The existence of these decisions undermines Handley's contention that clearly established federal law proscribes consideration of sources other than the written information.

Even if it were clearly established as a general proposition that the Sixth Amendment notice inquiry is

limited to the written information, the Supreme Court has never addressed whether a defendant may be afforded notice through informal amendment of the information, as the California Court of Appeal concluded occurred here. The state court found that Handley "was apprised of the prosecutor's intent to prove the special allegations required to impose a sentence of LWOP" and "consented to the inclusion of those allegations in the jury instructions and verdict form." *Handley II*, 2021 WL 1138353, at \*11; *see Anderson*, 470 P.3d at 11–12 (describing the notice and consent requirements applicable where, as here, informal amendment authorizes increased punishment). The court therefore concluded that "the conditions for an informal amendment of the charges have been met" and, accordingly, that Handley "was afforded sufficient notice of the charges." *Handley II*, 2021 WL 1138353, at \*11. Handley cites no Supreme Court decision precluding this form of notice.

Handley argues that notice through informal amendment of the information is insufficient because "[t]he Sixth Amendment notice requirement is designed to permit defendants to prepare a defense *prior to trial*." We agree generally with the proposition that notice afforded at the end of trial is insufficient. *See Gautt*, 489 F.3d at 1002 ("The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense."); *id.* at 1010 ("[J]ury instructions or closing arguments—sure signs that the *end* of a trial is drawing near—. . . cannot . . . serve as the requisite notice of the charged conduct, coming as [they do] *after* the defendant has settled on a defense strategy and put on his evidence."); *cf. In re Gault*, 387 U.S. 1, 33 (1967) ("Notice, to comply with due process requirements, must be given sufficiently in

advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded . . . ."). But where, as here, the defendant agrees to the amendment, these concerns do not appear to be present. Again, Handley points to no Supreme Court precedent holding that notice provided through informal amendment of the information—with the defendant's consent—cannot satisfy the Sixth Amendment's notice requirement.[16]

To conclude, the California Court of Appeal's decision was not "contrary to" clearly established federal law because the state court looked beyond the written information to conclude that Handley received adequate notice of the special allegations. The Supreme Court has not held that the notice inquiry is limited to the information, and even if the inquiry were so limited, the Court has not held that notice may not be provided through consensual amendment of the information.

## D

Handley also argues that the California Court of Appeal's application of the state's informal amendment

---

[16] For this reason, our dissenting colleague's reliance on *Gault* is misplaced. It is true that the parents of the minor child subject to juvenile court proceedings in *Gault* did not object to late notice of the charges. *Gault*, 387 U.S. at 34 n.54. But those parents, unlike Handley, were not represented by counsel; indeed, they were not even informed of their right to such counsel. *See id.* It was under those circumstances that the Court held that it could not consider the parents' "failure to object to the lack of constitutionally adequate notice as a waiver of their rights." *Id.* Accordingly, *Gault* does not address the circumstances of this case, where Handley was represented by counsel and—rather than merely failing to object to late notice—affirmatively consented to amendment of the information during trial.

doctrine "was based on an unreasonable determination of the facts" under § 2254(d)(2).

Applying California law, the court of appeal concluded that "the conditions for an informal amendment of the charges have been met" because Handley "was apprised of the prosecutor's intent to prove the special allegations required to impose a sentence of LWOP" at the second jury instruction conference and "consented to the inclusion of those allegations." *Handley II*, 2021 WL 1138353, at \*11. Handley maintains that the second jury instruction conference was too riddled with errors to provide him proper notice of the special allegations or his life-without-parole sentence. We quote the relevant portion of the transcript in full:

> THE COURT: Counts 1 and 2, the 209 contains a special, additional factor if great bodily injury was inflicted. The people also allege a 12022.7, great bodily injury, sentencing enhancement, as to Count 4, which I understand they have a pending motion regarding.
>
> The court prepared jury instructions asking the jury to make findings on both the substantive crime and then whether or not that crime, if committed, great bodily injury was inflicted.
>
> The way that the CALCRIMS read, it should be a special finding, but it's not technically a sentencing enhancement and the like.

On behalf of the defense, have you had an opportunity to see the verdict forms, sir?

DEFENSE COUNSEL: I have not finished reviewing them, Your Honor.

THE COURT: I am preparing to instruct consistent with what I have just said.

Is there any objection by the defense? There was not when we went over jury instructions.

DEFENSE COUNSEL: No, there is not.

THE COURT: Next there is a People's motion as to that sentencing enhancement.

PROSECUTOR MURPHY: Yes, Your Honor. We would—we moved to strike that.

THE COURT: Any objection, sir?

DEFENSE COUNSEL: No.

THE COURT: That request is granted and the court will then remove the great bodily injury jury instruction from that making sure that it's still contained in Counts 1 and 2 when—which I believe it is, but I'll just be double-checking on that.

PROSECUTOR BROWN: Your Honor, in regards to the second count involving Mary . . . , if the court could take a look at the actual verdict form that the people drafted in regards to Count 2, there is kind of an "or" within the Penal Code. "There is GBI

inflicted on the person or" and our theory of liability is the "or" part.

So I know the court just drafted a special instruction regarding that finding. It's a little different with regards to our theory on Mary . . . .

PROSECUTOR MURPHY: We apologize for the lateness, Your Honor. We were actually dealing with this up until last night.

THE COURT: Noted.

So your theory is intent to confine, a manner in which exposes that person to a substantial likelihood of death?

PROSECUTOR MURPHY: Yes.

THE COURT: Any objection to the people proceeding under that theory?

DEFENSE COUNSEL: As to [Michael]?[17]

PROSECUTOR MURPHY: No. To [Mary].

THE COURT: [Mary].

DEFENSE COUNSEL: I have no objection to proceeding on that theory.

---

[17] The brackets here and below in this colloquy replace the victims' last names, as recited by the district court, with their first names.

THE COURT: Thank you. Then the court
will be modifying the instruction as to Count
2.

Handley argues that this discussion denied him notice of
the special allegations for two reasons. First, he emphasizes
that both the trial court and the prosecution confused the
standard applicable to special allegations under section
209(a) ("death," "bodily harm," or "intentionally confined in
a manner which exposes that person to a substantial
likelihood of death") with the standard applicable to a
sentencing enhancement under section 12022.7(a) ("great
bodily injury").[18] While discussing the special allegations
under section 209(a), both the trial court and the prosecution
mistakenly referred to "great bodily injury" or "GBI" instead
of "bodily harm." Handley argues that this muddling of the
elements denied him notice of the special allegations
because "telling petitioner that jurors would be asked to
'make findings' on whether 'great bodily injury' had been
inflicted did not necessarily give notice that anything new
was going to the jury."

Second, Handley highlights the trial court's statement
that a special finding under section 209(a) is "not technically
a sentencing enhancement." Handley argues that this

---

[18] As noted, the information charged an enhancement under section
12022.7(a) on Count 4, the torture count, alleging that Handley
"*personally inflicted* great bodily injury" on Michael. The prosecution
dropped the enhancement charge at the January 3, 2018 hearing. We do
not know why the prosecution dropped the enhancement charge. The
theory the prosecution chose to present to the jury during closing
argument was that Handley drove the van while the other two kidnappers
tortured Michael in the back of the vehicle. *See Handley II*, 2021 WL
1138353, at *4 (noting that "the prosecution maintained" that Handley
"played an integral role as the driver of the van").

statement denied him notice of the special allegations because it suggested that those allegations would not increase his sentence. He says that "he would have had no idea he was now facing an aggravated kidnapping charge and a life without parole term."[19]

The state court of appeal's finding that Handley received notice that the prosecution was alleging special allegations under section 209(a) was not objectively unreasonable. To be sure, the trial court confused "great bodily injury" with "bodily harm." But the court also referred to Counts 1 and 2 and to section 209. And the court and counsel discussed the two prongs of section 209(a)'s special allegation—bodily harm and confinement exposing a person to a substantial likelihood of death—and clarified that the prosecution was alleging the latter theory with respect to Count 2 (Mary). There was therefore a reasonable basis for the state court to find that Handley was on notice that the prosecution was alleging special allegations under section 209(a) rather than pursuing an enhancement under section 12022.7(a). Handley suggests that the trial court's statement that special allegations under section 209(a) are not technically enhancements was misleading. The court, however,

---

[19] Handley and our dissenting colleague also cite the California Court of Appeal's discussion of this issue in *Handley I*. But the court of appeal vacated *Handley I* at the California Supreme Court's direction, *see Handley II*, 2021 WL 1138353, at *1, rendering *Handley I* "a nullity." *See People v. Hamilton*, 753 P.2d 1109, 1117 (Cal. 1988); *City of Santa Clarita v. NTS Tech. Sys.*, 40 Cal. Rptr. 3d 244, 247 n.5 (Ct. App. 2006); *Venegas v. County of Los Angeles*, No. B218948, 2011 WL 3672932, at *8 (Cal. Ct. App. Aug. 23, 2011).

accurately stated California law. *See Jones*, 213 P.3d at 1004.[20]

The state court of appeal's finding that Handley affirmatively consented to the new charges was also objectively reasonable. The trial court asked defense counsel if he had any objection to instructing the jury on the special allegations and counsel responded that he had no objection. After the prosecution made clear that it was alleging a confinement theory on Count 2, as to Mary, the trial court asked defense counsel whether he had any objection to the People proceeding under that theory, and defense counsel stated that he had "no objection to proceeding on that theory."

Handley's suggestion that he lacked notice of, or failed to consent to, the special allegations is also difficult to reconcile with his subsequent conduct. As the court of appeal pointed out, defense counsel

> voiced no objection when the prosecutor
> argued those allegations in closing argument

---

[20] As our dissenting colleague observes, Handley, as a layperson, may not have understood the distinction California law draws between sentencing factors and sentencing enhancements. But Handley's attorney understood that the prosecution was seeking life without possibility of parole under section 209(a), and courts have long presumed that defense attorneys explain the nature of the charges to their clients. *See, e.g.*, *Henderson v. Morgan*, 426 U.S. 637, 647 (1976) ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Panuccio v. Kelly*, 927 F.2d 106, 111 (2d Cir. 1991) ("The trial court could also appropriately assume that Panuccio understood the charges against him since he was represented by counsel who had presumably explained the charges to him.").

or when the jury returned true findings thereon. . . .

And later on, defense counsel fully acknowledged in his sentencing brief that [Handley] was facing a potential sentence of LWOP based on those findings. Defense counsel made the argument that imposition of an LWOP sentence would be cruel and unusual under the Eighth Amendment, but—to his credit—he never so much as suggested that an LWOP sentence was improper on due process grounds for lack of notice. Nor did he ever suggest that [Handley]'s plea decisions or trial strategy were impacted by the manner in which the case was charged.

*Handley II*, 2021 WL 1138353, at *11.[21]

In sum, the record does not show that the state court's decision was based on an unreasonable determination of the facts under § 2254(d)(2).

E

Handley argues that informal amendment of the information failed to afford him adequate notice under the Sixth Amendment because he "was never expressly

---

[21] Although Handley argues in this court that he might have chosen to plead guilty if the written information had included the special allegations, he does not appear to have made that argument, or to have presented any evidence in support of it, in the state court. *See Handley II*, 2021 WL 1138353, at *11 (noting that Handley never suggested that his plea decisions were impacted by the manner in which the case was charged and that "[t]here would have been no support for [that] argument" if it had been presented).

informed he could be sentenced to LWOP if the jury found the special allegations true." *Id.* at \*12. The court of appeal rejected this argument, reasoning that "once the aggravated kidnapping charges were informally amended to include allegations of bodily harm and substantial likelihood of death, [Handley] was sufficiently apprised of this possibility." *Id.*

We reject Handley's suggestion that the state court's decision was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court precedent. The state court concluded that Handley had sufficient notice that he was exposed to a sentence of life without possibility of parole because he had explicit notice that the prosecution was charging special allegations under section 209(a), and section 209(a) itself plainly states that a sentence of life without possibility of parole applies when such allegations are proven. The Sixth Amendment guarantees a defendant the right "to be informed of any *charges* against him." *Gautt*, 489 F.3d at 1004 (emphasis added). Handley cites no Supreme Court decision clearly establishing that the Sixth Amendment affords the defendant the additional right to have the applicable sentence spelled out in the charging document.

## IV

For the foregoing reasons, we hold that the California Court of Appeal's decision denying Handley's Sixth Amendment notice claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because AEDPA is not

satisfied, Handley is not entitled to de novo review of his Sixth Amendment claim and we do not address his arguments pertaining to the merits of that claim. The district court's judgment is **AFFIRMED**.

---

DONATO, District Judge, dissenting:

Petitioner Kyle Handley was convicted of a crime he was never charged with, and sentenced to life in prison without the possibility of parole. The California Court of Appeal upheld this injustice on the basis of an unreasonable application of clearly established precedent from the Supreme Court of the United States. *See People v. Handley* (*Handley I*), No. G056608, 2020 WL 58048 (Cal. Ct. App. Jan. 6, 2020); *People v. Handley* (*Handley II*), No. G056608, 2021 WL 1138353 (Cal. Ct. App. Mar. 25, 2021). The majority leaves Handley behind bars without a lawful prosecution under Penal Code Section 209(a) and gives the imprimatur of the federal courts for California to make the same grave error in future kidnapping cases. I dissent.

## I

## A

A deeper dive into the state court proceedings is useful to fully capture the fundamental unfairness of Handley's prosecution. On October 12, 2012, the Orange County District Attorney filed a felony complaint against Handley, charging two counts of kidnapping for ransom, in violation of California Penal Code Section 209(a); one count of aggravated mayhem, in violation of Penal Code Section 205; one count of torture, in violation of Penal Code Section 206;

and one count of first-degree residential burglary, in violation of Penal Code Sections 459 and 460(a).

As Section 209(a) stated at that time:

> Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, or any person who aids or abets any such act, is guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm.

Cal. Pen. Code § 209(a) (2012).[1]  The plain language of the statute makes clear that a defendant charged with kidnapping for ransom faced two very different sentences, depending on the facts of the kidnapping.  For a conviction of "simple" kidnapping for ransom, a defendant would be sentenced to

---

[1]  Unless otherwise noted, all citations are to the 2012 version of the California Penal Code, which was in effect when the crimes were committed.

life in prison with the possibility of parole (LWP). For "aggravated" kidnapping for ransom, which involved bodily harm or a substantial likelihood of death, the penalty was a life sentence without the possibility of parole (LWOP). For Handley, this meant the difference between spending the rest of his natural life in custody versus the possibility of being eligible for parole after seven years of custody. *See* Cal. Pen. Code § 3046(a)(1).

For the kidnapping counts, the complaint alleged that Handley "had the intent to hold and detain, [and] did unlawfully seize, confine, . . . detain [Michael and Mary] for ransom, reward, extortion, and to exact from another person money and other valuable things." For the torture count, the complaint "alleged pursuant to Penal Code section 12022.7(a) (GREAT BODILY INJURY) . . . that [Handley] personally inflicted great bodily injury on [Michael], who was not an accomplice during the commission and attempted commission of the above offense." This allegation exposed Handley to an "additional and consecutive term of imprisonment in the state prison for three years." Cal. Pen. Code § 12022.7(a).

Two years later, the prosecution moved to consolidate Handley's case with the case against Hossein Nayeri, who was said to have been the mastermind behind the scheme. *See Handley II*, 2021 WL 1138353, at *3-4. In the consolidation motion, the prosecution said that Handley was "accused of Two counts of PC 209(a) Kidnap for Ransom, Once [sic] Count of Aggravated Mayhem, Once [sic] Count of Torture, and one count of First Degree Residential Burglary. There is additionally an allegation that Great Bodily injury was inflicted during the course of Torture as well as during the course of the Kidnap for Ransom, Extortion. The penalty if convicted is life without parole."

Even so, on October 23, 2014, the prosecution filed a consolidated criminal complaint, which alleged the same counts against Handley, with identical language as in the original 2012 complaint. To be clear, the amended complaint again charged Handley only with kidnapping for ransom under Penal Code Section 209(a), and not with aggravated circumstances of bodily harm or death. The motion to consolidate had included language about "great bodily injury" in connection with the kidnapping for ransom count, but the consolidated complaint itself alleged only that Handley 'had the intent to hold and detain, [and] did unlawfully seize, confine, . . . and detain [Michael and Mary] for ransom, reward, extortion, and to exact from another person money and other valuable things." The consolidated complaint repeated the allegation of "great bodily injury" solely "[a]s to Count(s) 4," the torture count.

In March 2015, Handley appeared for a preliminary examination. The prosecution sought "to hold both Mr. Hossein Nayeri and Kyle Handley to answer to all the crimes that are charged in the amended complaint." For Handley, that meant the kidnapping charge without aggravating circumstances. After the state's presentation of the facts it believed supported the charges, the state court said "it does appear to the court that there is sufficient and probable cause to believe that defendant Handley . . . committed the felonies charged in counts 1 through 5, and the related enhancements as charged in the complaint. Therefore, [Handley is] . . . hereby ordered held to answer as to those counts and enhancements."

Six days later, the final and operative criminal information was filed against Handley. It alleged two counts of kidnapping for ransom with language identical to the 2012 and 2014 charging documents, as well as "great bodily

injury" "[a]s to Count(s) 4" for torture. Aggravating circumstances of bodily harm or death were not charged with respect to Penal Code Section 209(a).

In sum, the record establishes that for several years, across multiple charging documents and a preliminary examination, Handley was never charged with the circumstances of bodily harm or substantial likelihood of death in connection with the kidnapping counts. All the charging documents alleged only simple kidnapping for ransom under Penal Code Section 209(a), with a sentence of life with the possibility of parole.

## B

How then did Handley's prosecution end in a conviction of aggravated kidnapping for ransom and a sentence of life in prison without the possibility of parole? It happened on the fly as the trial court drafted jury instructions during the final days of trial.

Handley was tried on December 18-21, 2017, and January 3-4, 2018. The prosecution's theory was that Handley "played an integral role [in the kidnapping scheme] as the driver of the van." *Handley II*, 2021 WL 1138353, at *4. Handley elected not to present evidence in his defense or contest the prosecution's portrayal of the scheme. Instead, he argued that there was not enough evidence to tie him to the crime. *See id.*

On December 21, 2017, the trial court held a conference on jury instructions. With respect to the kidnapping counts, the court said it would give instruction "1202" for "Kidnapping for Extortion." Defense counsel said he had "no objection." The record does not contain a copy of the precise instructions referenced in this conference, but the

model instruction states that the jury must find the defendant (1) kidnapped, detained, or intended to detain; (2) for ransom or reward or extortion; and (3) the person did not consent to the detainment or kidnapping. *See* Jud. Council of Cal., Crim. Jury Instructions (CALCRIM), No. 1202, at 952 (2017). Under a heading called "Sentencing Factor," the model instruction notes the different sentences in Section 209(a) and states that:

> If you find the defendant guilty of kidnapping for (ransom [,]/ [or] reward[,]/ [or] extortion), you must then decide whether the People have proved the additional allegation that the defendant (caused the kidnapped person to (die/suffer bodily harm)/ [or] intentionally confined the kidnapped person in a way that created a substantial likelihood of death).

*Id.* at 953 (brackets in original). This "Sentencing Factor" instruction appears in the model instruction after separate instructions about the elements of the crime and various possible defenses. *See id.* at 952-53. It is unclear if this "Sentencing Factor" instruction was in the trial court's proposed instruction being discussed with the parties on December 21, 2017.

On January 3, 2018, the day on which the presentation of evidence closed, the trial court held a second conference to "briefly formalize" some matters. "Counts 1 and 2," the trial judge said, "the 209 contains a special, additional factor if great bodily injury was inflicted. The people also allege a 12022.7, great bodily injury, sentencing enhancement, as to count 4, which I understand they have a pending motion regarding. The Court prepared jury instructions asking the

jury to make findings on both the substantive crime and then whether or not that crime, if committed, great bodily injury was inflicted. The way that the CALCRIMS read, it should be a special finding, but *it's not technically a sentencing enhancement and the like*" (emphasis added).

The trial court got the law wrong in these remarks, as Respondent forthrightly agrees, and the California Court of Appeal concluded. *See Handley II*, 2021 WL 1138353, at *6. The trial judge repeatedly referred to "great bodily injury" in connection with the kidnapping charge, but Section 209(a) states that "bodily harm" is the factual circumstance required for an LWOP sentence. The prosecution, too, repeatedly made the same mistake. "Great bodily injury" is a separate sentencing enhancement that was alleged for the torture count, and if successful would have resulted in an "additional and consecutive term of imprisonment in the state prison for three years." Cal. Pen. Code § 12022.7(a).

The majority says the trial judge "did not misspeak by pointing out that special allegations under Section 209(a) are not sentencing enhancements." But the Court of Appeal itself called the allegations "enhancement factors" and "sentencing factors." *Handley II*, 2021 WL 1138353, at *8. If the majority means to suggest that the trial judge did not misspeak because Handley should have understood in the moment that "great bodily injury" meant "bodily harm" and a sentence of life without parole under Section 209(a), they ask too much. Perhaps "a person trained in the arcana of California sentencing law would understand the judge was attempting to draw" a legal distinction, but "a layperson such as [Handley] might well construe the judge's comment simply to mean that a true finding on the bodily harm allegation would not result in [his] sentence being enhanced

or increased." *Handley I*, 2020 WL 58048, at \*7.**²**  As the California Court of Appeal stated, Handley "was never expressly informed he could be sentenced to LWOP if the jury found the special allegations true." *Handley II*, 2021 WL 1138353, at \*12.

After telling Handley that the new instruction language regarding "great bodily injury" was "not technically a sentencing enhancement and the like," the trial judge asked if defense counsel had reviewed the verdict forms.  Counsel answered, "I have not finished reviewing them, your Honor."  The trial judge said, "I am preparing to instruct consistent with what I have just said.  Is there any objection by the defense?  There was not when we went over jury instructions."  Counsel answered, "No, there is not."

After that, the prosecution moved to strike the "great bodily injury" allegation made in connection with the torture count.  The request was granted.  The prosecution then asked to modify the new language the trial judge had just added to the kidnapping count as to the victim Mary to say that she was exposed to a "substantial likelihood of death" rather than "GBI" (great bodily injury).  It is unclear if Handley or his counsel had a copy of the modified instructions at the end of the conference, as the trial judge told the parties, "I'll do my best to get those instructions to you as quickly as possible."

Approximately two hours after these discussions, the prosecution began closing arguments.  The next day, on January 4th, the trial court instructed the jury, and the jury

---

² As the majority notes, *Handley I* was vacated by the California Supreme Court on other grounds, but this commonsense point still stands in the Court of Appeal's well-phrased formulation.  I do not cite it here as precedent.

completed its deliberations. The jury found Handley "GUILTY as to count 1 as charged in the Original Information" and "GUILTY as to count 2 as charged in the Original Information." The jury further found "IT TO BE TRUE that during the course of the above kidnapping for Ransom/Robbery/Extortion/or to Exact Money or a valuable thing that Michael . . . suffered bodily harm" and that "Mary . . . was intentionally confined in a manner that exposed her to a substantial likelihood of death."

At sentencing, defense counsel "fully acknowledged . . . that [Handley] was facing a potential sentence of LWOP based on" the jury's findings but "made the argument that imposition of [such a] sentence would be [unconstitutionally] cruel and unusual." *Handley II*, 2021 WL 1138353, at *11. The trial court rejected the argument and sentenced Handley to LWOP on each of the kidnapping counts. For the mayhem and torture counts, on which Handley was also found guilty, the trial court sentenced him to "two consecutive terms of life with the possibility of parole after a minimum of 7 years."

Overall, the record establishes that Handley was convicted of "aggravated" kidnapping for ransom and sentenced to LWOP based on circumstances of bodily harm and substantial likelihood of death that were never alleged in any charging documents against him, and were injected into his case at a jury instruction conference held two hours before the close of evidence.

## II

### A

Handley raises a straightforward proposition in his habeas petition: If a fact exposes a defendant to additional

punishment, it is an element of the crime that the state must allege so that the defendant has fair notice of the charge against him. The clearly established precedents of the Supreme Court command no less.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court concluded that facts which increase the maximum punishment an accused faces, other than the fact of prior conviction, must be proven to a jury beyond a reasonable doubt. This holding was "foreshadowed" by a prior decision in which the Court had said that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476 (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)). "The Fourteenth Amendment command[ed] the same answer in th[at] case involving a state statute." *Id.*

*Apprendi* was based on an application of two principles in *Jones*: (1) the Due Process Clause guarantees to every criminal defendant "a jury determination that [he or she] is guilty of every element of the crime with which [he or she] is charged, beyond a reasonable doubt," *id.* at 477 (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)); and (2) any fact which increases the punishment a defendant may suffer is, for purposes of the Sixth Amendment's notice and jury trial guarantees, an element of the crime for which the defendant is being held to account, *id.* at 483 n.10, 491, 494. The Due Process principle was well established. *See id.* at 476-77; *id.* at 499 (Scalia, J., concurring); *id.* at 499-500 (Thomas, J., concurring); *id.* at 524 (O'Connor, J., dissenting). The Court devoted much of its discussion to the second principle, namely why a fact that increases the

maximum punishment is an "element" of the charged offense.

To that point, the Court detailed the long-standing and "invariable linkage of punishment with crime" in the common law. *Apprendi*, 530 U.S. at 478. "As a general rule," the distinction between "an 'element' of a felony offense and a 'sentencing factor'" was nonexistent because "criminal proceedings were submitted to a jury after being initiated by an indictment." *Id.* at 478. The accusation was to contain "all the facts and circumstances which constitute the offence, . . . stated with such certainty and precision," in order that "[the defendant] may prepare his defence accordingly" and so "*that there may be no doubt as to the judgment which should be given*, if the defendant be convicted."[3] *Id.* at 478 (omission and emphasis in original) (quoting J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)).

"This practice at common law held true" for offenses defined by statute as well. *Apprendi*, 530 U.S. at 480. The Court stated that "the circumstances mandating a particular punishment" were like "the circumstances of the crime and the intent of the defendant at the time of commission," and were "often essential elements to be alleged in the indictment." *Id.* This example illustrated the point:

> Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring

---

[3] "Judgment" here means "the stage approximating in modern terms the imposition of sentence." *Apprendi*, 530 U.S. at 478 n.4 (citing 4 W. Blackstone, Commentaries on the Laws of England 368 (1769)).

the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision. If, then, upon an indictment under the statute, the prosecutor prove the felony to have been committed, but fail in proving it to have been committed under the circumstances specified in the statute, the defendant shall be convicted of the common-law felony only.

*Id.* at 480-81 (cleaned up) (quoting Archbold at 51, 188).

This and other evidence established the "historic link between verdict and judgment." *Id.* at 482. In effect, the Court concluded that the long tradition in the common law linking pleading, crime, and punishment established that facts which increase punishment are essential to, and so are elements of, an "offense" for purposes of the Sixth Amendment's notice and jury trial guarantees. *Id.* at 483, n.10, 494 n.19.

The Court emphasized its adherence to this traditional linkage. *See id.* at 480-90. It underscored a prior determination that Due Process guarantees are not "limited to those facts that constitute a crime as defined by state law." *Mullaney v. Wilbur*, 421 U.S. 684, 698 (1975); *see Apprendi*, 530 U.S. at 485-86. This is so because nothing would otherwise stop a state from circumventing the Constitution's procedural guarantees "merely by 'redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.'" *Apprendi*, 530 U.S. at 486 (alteration in original) (quoting *Mullaney*, 421 U.S. at 698); *see also id.* at 486

("[C]onstitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense.").

The Supreme Court extended *Apprendi* and refined the Sixth Amendment framework in *Alleyne v. United States*, 570 U.S. 99 (2013).  The Court concluded that facts which increase the minimum punishment an individual is to suffer must be tried to a jury and found beyond a reasonable doubt under the Sixth Amendment and Due Process Clause.  *Id.* at 104, 116-18.  *Alleyne* was based on the same principles stated in *Apprendi*: Due Process requires proof to a jury beyond a reasonable doubt of all elements of a crime, and any fact which aggravates the punishment to which an individual may be exposed is an "element" of the offense for purposes of the Sixth Amendment's procedural guarantees.

*Alleyne* applied the determination in *Apprendi* that "'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime" to conclude that "[i]t is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime."  *Id.* at 111-12 (quoting *Apprendi*, 530 U.S. at 490). There is no basis for distinguishing between a fact that increases the maximum punishment and a fact that increases the minimum punishment, because both "*aggravate* the punishment."  *Id.* at 113 (emphasis in original).  *Apprendi* established that any "fact that increases a sentencing floor, thus, forms an essential ingredient of the offense" and "each element . . . must be submitted to the jury."  *Id.* at 113.

*Alleyne* clarified that "the essential Sixth Amendment inquiry is whether a fact is an element of the crime."  *Id.* at 114.  *Apprendi* compelled the conclusion that any "finding of fact" which "alters the legally prescribed punishment so

as to aggravate it . . . necessarily forms a constituent part of a new offense." *Id.* at 114-15.

These rulings clearly established that a fact which aggravates the legally prescribed punishment is an "element" of the offense for purposes of the Sixth Amendment. This principle was "indispensable" to the conclusions in *Apprendi* and *Alleyne* that the defendants' Sixth Amendment rights were violated and so constitutes a holding of the Supreme Court for purposes of AEDPA. *Andrew v. White*, 604 U.S. ---, 145 S. Ct. 75, 81 (2025) (per curiam); *see also id.* ("When this Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court for purposes of AEDPA." (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

## B

The Court of Appeal mentioned the right cases but unreasonably applied them to deny Handley relief. It essentially ignored *Apprendi* and its progeny in a wholly unreasonable fashion. It said that a criminal pleading "need only charge the essential elements of the statutory offense" to comply with constitutional requirements, for "then [it] fairly apprises the defendant of what he is to meet at the trial." *Handley II*, 2021 WL 1138353, at *8 (citation omitted). There was no problem with the operative information because Section 209(a) "defines but one crime" and, under California law, bodily harm and substantial likelihood of death "are special factors pertaining to the issue of punishment." *Id.* at *5. Consequently, because "the relevant enhancement factors . . . are embedded in a single statute," the citation to Section 209(a) sufficed to give Handley constitutionally adequate notice of the "one crime" for which he was charged and convicted. *Id.* at *5, 8. The

parties agree the state court's basis for this conclusion was the Supreme Court of California's decision in *People v. Britton*, 6 Cal. 2d 1 (1936).

The state court made little effort to square these conclusions with *Apprendi*, *Alleyne*, and the long tradition of due process on which they were built. Its core conclusion -- that Section 209(a) may properly be understood to state a single offense for purposes of the Sixth Amendment -- was the fruit of an unreasonable application of *Apprendi* and *Alleyne*. Consequently, the denial of relief to Handley was not only wrong but "objectively" so. *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted).

A comparison of Section 209(a) and the statute in *Alleyne* puts a finer point on this error. *Alleyne* concerned Section 924(c) of title 18 of the United States Code, which assigned a penalty of imprisonment of "not less than 5 years" for "us[ing] or carr[ying] a firearm" in relation to a "crime of violence" but "imprisonment of not less than 7 years" if "the firearm is brandished." *Alleyne*, 570 U.S. at 1003-04 (quoting 18 U.S.C. §§ 924(c)(1)(A)(i)-(ii)). *Alleyne* held that "the fact of brandishing" is "an element of a separate aggravated offense." *Id.* at 115.

Section 209(a) is similarly structured. It assigns a penalty of LWP for kidnapping for ransom, and an enhanced penalty of LWOP if it is proved that the victim suffered bodily harm or faced a substantial likelihood of death. For both Section 209(a) and Section 924(c), specific facts about the commission of the prohibited conduct open the door to greater punishments.

Consequently, it is hard to see how the state court's glib treatment of *Apprendi* and *Alleyne* in affirming Handley's conviction under Section 209(a) was anything short of

"objectively unreasonable." *White*, 572 U.S. at 419 (citation omitted). To be sure, state Section 209(a) presents both penalties in a single subsection, whereas federal Section 924(c) splits the penalties across subparts (i), (ii), and (iii), but these differences in formatting are hardly of constitutional magnitude.

The Court of Appeal relied mainly on the 1936 decision of the California Supreme Court in *Britton*. The date bears emphasis because *Britton* was decided before the Sixth Amendment right to notice was held to be incorporated against the states by the Fourteenth Amendment, *see Cole v. Arkansas*, 333 U.S. 196 (1948), and obviously decades before *Apprendi*, *Alleyne*, and related precedent. The Court of Appeal cited *Britton* for the proposition that the facts of bodily harm or likelihood of death in Section 209(a) were "special factors pertaining to the issue of punishment" that "do not affect the singular nature of the underlying offense." *Handley II*, 2021 WL 1138353, at *5 (citing *Britton*, 6 Cal. 2d at 4-5). The Court of Appeal offered no explanation of how that proposition might be squared with the Sixth Amendment precedent from the Supreme Court of the United States. *Apprendi* expressly cautioned against exactly this error. It emphasized that state law could not circumvent the Constitution's procedural guarantees by "redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." *Apprendi,* 530 U.S. at 485-86 (alteration in original) (citing *Mullaney*, 421 U.S. at 698); *see also Alleyne*, 570 U.S. at 105 (*Apprendi* "identified a concrete limit on the types of facts that legislatures may designate as sentencing factors").

Consequently, "beyond any possibility for fairminded disagreement," *Harrington v. Richter*, 562 U.S. 86, 103 (2011), the Court of Appeal's decision was outside the

"range of reasonable judgment," *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). An aggravating fact that produces a higher range of sentence "*conclusively indicates* that the fact is an element of a distinct and aggravated crime." *Alleyne*, 570 U.S. at 116 (emphasis added). The essential premise of *Britton*, that Section 209 sets forth only one offense, is not consonant with the principles clearly established by *Apprendi* and *Alleyne*. Rather than address this issue head on, the state court said only that "*Apprendi* was not a notice case" and that "[i]t is highly doubtful that *Apprendi* has any effect whatever on *pleading requirements*." *Handley II*, 2021 WL 1138353, at *8-9 (alteration and emphasis in original) (citation omitted). This rather cavalier dismissal was again bereft of a cogent explanation. In effect, the state court punted on Handley's Sixth Amendment claim under the federal law clearly established at the time of its decision.

The state court's error was a "critical oversight," *Gautt v. Lewis*, 489 F.3d 993, 1008 (9th Cir. 2007), going to the heart of Handley's constitutional claim and "the essential Sixth Amendment inquiry," *Alleyne*, 570 U.S. at 114. Because the state court's "adjudication of [Handley's Sixth Amendment] claim [was] dependent on an antecedent unreasonable application of federal law" with respect to the elements of the offenses set forth in Section 209(a), I would conclude "the requirement set forth in § 2254(d)(1) is satisfied." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

## C

The majority responds to all of this by drawing distinctions that the established precedent does not support and applying the Fifth Amendment to truncate the Sixth

Amendment. These arguments do not do the work the majority asks of them.

## 1

To start, the majority says there is a distinction between facts that are elements of an offense and "punishment-enhancing facts," which are said to be "facts serving solely to increase the prescribed range of penalties to which a defendant is exposed." But *Apprendi* clearly establishes there is no such difference. *See Apprendi*, 530 U.S. at 494 n.19 ("[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense . . . . Indeed, it fits squarely within the usual definition of an 'element' of the offense.").

This chart illustrates how the majority's definitions are actually the same as those in *Apprendi* and *Alleyne*:

| Majority's definition of "punishment-enhancing fact" | *Apprendi* and *Alleyne*'s definition of "element" |
|---|---|
| • "[F]acts that serve only to increase the prescribed punishment to which a defendant is exposed."<br><br>• "[F]acts that increase the prescribed range of penalties to which a defendant is exposed." | • "[P]ut simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." *Apprendi*, 530 U.S. at 483 n.10.<br><br>• "When a finding of fact alters the legally prescribed punishment so |

|  | as to aggravate it, the fact necessarily forms a constituent part of a new offense." *Alleyne*, 570 U.S. at 114-15. |
|  | • "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime." *Alleyne*, 570 U.S. at 115-16. |

The majority also says that Handley essentially conceded his case. It says Handley agreed that "these decisions did not hold that such facts must be charged in a state criminal pleading" and that any statements in them to the contrary was "dicta" for AEDPA purposes.

Not so. Handley filed his opening brief before the Supreme Court decided *Andrew*, which clarified when legal principles are "holdings" for purposes of AEDPA. After *Andrew* was decided, Handley promptly filed a Rule 28(j) letter with this Court in which he squarely contended that the principles in *Jones, Apprendi* and *Alleyne,* are "a 'holding' of the Court for purposes of AEDPA" (quoting *Andrew*, 145 S. Ct. at 81). At oral argument, Handley's lawyer repeatedly relied on *Andrew* to argue that punishment-enhancing facts are "elements" under *Apprendi* and *Alleyne*. This is not a record of concession or agreement by Handley that plugs the holes in the majority's analysis.

## 2

The majority asserts more broadly that precedent with respect to the grand jury clause in the Fifth Amendment forecloses the conclusion that the Sixth Amendment requires state charging documents to allege punishment-enhancing facts.  The logic is said to go like this.  Longstanding precedent holds that the guarantee of an indictment by a grand jury in criminal cases was not incorporated by the Fourteenth Amendment to apply to the states. *See Hurtado v. California*, 110 U.S. 516, 535 (1884); *Branzberg v. Hayes*, 408 U.S. 665, 688 n.25 (1972).  *Apprendi* identified the historical linkage of pleading, crime, and punishment with respect to the Sixth Amendment, and did not overturn the holding that the right of indictment by a grand jury does not apply to the states. *See Apprendi*, 530 U.S. at 477 n.3.  Any doubt about this was put to rest in *United States v. Cotton*, 535 U.S. 625 (2002), which drew a distinction "between federal and state prosecutions."  Consequently, the constitutional requirements of notice and the elements of a criminal charge in an indictment do not apply to the states because the Fifth Amendment right to an indictment is not incorporated by the Fourteenth Amendment.

This reasoning is doubtful in several respects.  It is true *Apprendi* reserved "the indictment question" for another day. *Apprendi*, 530 U.S. at 477 n.3.[4]  But that is not the end of the matter, as the majority would have it.  Unlike the grand

---

[4] Contrary to the majority's suggestion, footnote 3 in *Apprendi* did not say anything about reserving a Sixth Amendment question.  The "indictment question" the Court reserved was "the Fifth Amendment right to 'presentment or indictment of a Grand Jury' that was implicated in our recent decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)." *Apprendi*, 530 U.S. at 477 n.3.

jury clause in the Fifth Amendment, the Sixth Amendment has long been applied to the states by the Fourteenth Amendment. As noted in *McDonald v. City of Chicago*, 561 U.S. 742, 764 n.12 (2010), the many rights that originate under the Sixth Amendment have been incorporated in full in state criminal proceedings, including: the right to a trial by jury, *see Duncan v. Louisiana*, 391 U.S. 145 (1968); the right to compulsory process, *see Washington v. Texas*, 388 U.S. 14 (1967); the right to a speedy trial, *see Klopfer v. North Carolina*, 386 U.S. 213 (1967); the right to confront adverse witnesses, *see Pointer v. Texas*, 380 U.S. 400 (1965); the right to assistance of counsel, *see Gideon v. Wainwright*, 372 U.S. 335 (1963); and the right to a public trial, *see In re Oliver*, 333 U.S. 257 (1948).[5]

Even so, the majority suggests that *Cotton*, a case about waiver of a Fifth Amendment objection and plain error review, closes the door on the Sixth Amendment here because it stated that a fact which increases the penalty for a crime must be charged in an indictment "in federal prosecutions." *Cotton*, 535 U.S. at 627. This is a heavy hat to hang on *Cotton*, and it does not bear the weight. The fact that the Fifth Amendment does not require states to use grand juries to return indictments in state criminal cases does not mean that the Sixth Amendment principles identified in *Apprendi* and *Alleyne* do not apply to the states or state charging documents. That would be an odd conclusion

---

[5] *McDonald* noted one "exception" at the time of publication, namely that "although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials." *McDonald*, 561 U.S. at 766 n.14. But that too has changed, and a unanimous verdict is now required in state criminal cases. *See Ramos v. Louisiana*, 590 U.S. 83, 100 (2020).

given the overall incorporation of the Sixth Amendment to the states. To be sure, *Apprendi* and *Alleyne* specifically addressed the question of what facts must be submitted and proved to a petit jury in state and federal criminal trials, but that in no way indicates that the general principles of punishment, elements, and notice they identified and relied on in the Sixth Amendment do not apply here in full measure. *Cotton* did not, and had no reason to, overrule these general principles any more than *Apprendi* overruled the Fifth Amendment cases.

The more likely reason for the mention of federal prosecutions in *Cotton* is that it was simply speaking to the facts at hand. This case is different. To obtain relief, a habeas petitioner must identify a "controlling legal standard." *Panetti*, 551 U.S. at 953. "General legal principles can constitute clearly established law for purposes of AEDPA so long as they are holdings of [the Supreme] Court." *Andrew*, 145 S. Ct. at 82; *see also Panetti*, 551 U.S. at 953 ("[E]ven a general standard may be applied in an unreasonable manner."). A controlling standard or principle for Section 2254(d)(1) need not be neatly packaged in one decision. "For example, the Eighth Amendment principle that a sentence may not be grossly disproportionate to the offense is clearly established under § 2254(d)(1), even though it arises out of a thicket of Eighth Amendment jurisprudence and lacks precise contours." *Andrew*, 145 S. Ct. at 82 (cleaned up) (quoting *Lockyer*, 538 U.S. at 72).

So too here. *Apprendi*, *Alleyne*, and allied cases established the historical linkage of pleading, crime, and punishment as general principles embodied in the Sixth Amendment. These principles are "fundamental enough that when new factual permutations arise, the necessity to apply

the earlier rule will be beyond doubt." *Andrew*, 145 S. Ct. at 82 (quoting *White*, 572 U.S. at 427).

To conclude otherwise, as the majority does, unreasonably dilutes the Sixth Amendment. The Supreme Court has "abandoned 'the notion that the Fourteenth Amendment applies to States only a watered-down, subjective version of the individual guarantees of the Bill of Rights.'" *McDonald*, 561 U.S. at 765 (quoting *Malloy v. Hogan*, 378 U.S. 1, 10-11 (1964)). Rather, it has "decisively held that incorporated Bill of Rights protections 'are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.'" *Id*. (quoting *Malloy*, 378 U.S. at 10); *see also Timbs v. Indiana*, 586 U.S. 146, 150 (2019) ("[I]f a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires."). The majority reduces the Sixth Amendment to weak tea with its cramped reading of the general principles clearly established in Supreme Court precedent.

## D

Handley framed his challenge to the Court of Appeal's decision primarily as "contrary to" established precedent. AEDPA permits habeas relief when the state decision "was contrary to, or involved an unreasonable application of, clearly established" federal law in Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Given the clarification in *Andrew* of what constitutes a holding for purposes of AEDPA, which was decided after Handley filed his petition and brief, it would be unfair to penalize him for focusing more on the "contrary to" versus the "unreasonable application" prong, especially in light of his Rule 28(j) letter and oral arguments.

Moreover, it is not obvious there is a meaningful difference in this case between saying the state court's construction of Section 209(a) was "contrary to" *Apprendi* and *Alleyne*'s application of the principle versus saying that construction involved an "unreasonable application" of that principle.

In any event, we should not turn away a good merits argument on mere formalities. Rather, we must "focus on the substance of the [litigant's] claims, not the [litigant's] labels." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 788 n.4 (9th Cir. 2012); *see also Smith v. Texas*, 550 U.S. 297, 314 (2007) ("Smith's labeling of the claim . . . did not change its substance."). An issue is properly presented on habeas review when a party "provided [the] court with ample opportunity to make a reasoned judgment on the issue." *Goeke v. Branch*, 514 U.S. 115, 118 (1995). Handley has done that. It bears mention that the District Court also understood Handley to contend that the state court's decision was "objectively unreasonable factually or under the clearly established federal law."

### III

We come now to the second unreasonable application of precedent by the Court of Appeal. The court held that, "even if *Britton* were not controlling," "[n]o due process violation has been shown" because the charges against Handley were informally amended to provide adequate notice of an aggravated kidnapping charge and sentence of life without parole. *Handley II*, 2021 WL 1138353, at *9, 11. This was based on: (1) the trial judge stating at the December 21 conference that he would give the CALCRIM No. 1202 instruction, and defense counsel's failure to object; (2) the trial judge remarking at the January 3 conference that he would instruct on "great bodily injury" in connection with

the kidnapping-for-ransom counts; (3) the prosecution's statement at the January 3 conference that it would argue substantial likelihood of death as to Mary; (4) defense counsel's failure to object at the January 3 conference; (5) defense counsel's failure to object during closing argument or the return of the guilty verdict; and (6) defense counsel "fully acknowledging" that Handley faced "a potential sentence of LWOP" in his sentencing brief. *Id.* at *11.

These events happened during trial at the very end of Handley's multi-year prosecution, but nevertheless satisfied the state court that Handley was "apprised of the prosecutor's intent to prove the special allegations required to impose a sentence of LWOP," and that Handley "consented to the inclusion of those allegations in the jury instructions and verdict form." *Id.* The state court concluded Handley received all the process he was due because the record showed an informal amendment occurred as a matter of state law. *Id.* at *10-12.

This too was constitutional error. It is clearly established under the Sixth Amendment and Due Process Clause of the Fourteenth Amendment that a state criminal defendant "has a right . . . to be informed of any charges against him." *Gautt*, 487 U.S. at 1004 (discussing *Cole*, 333 U.S. 196); *see Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (circuit courts may "look to circuit precedent" to see if a "particular point in issue is clearly established by Supreme Court precedent"). The parties did not contend otherwise.

*Gautt* aptly stated that it was "troublesome" to treat jury instructions or closing arguments as a "substitute for sufficient notice to a defendant of the charges that have been leveled against him," but did not decide the issue because it

concluded the state court unreasonably determined the evidence from the late-stage trial events there so sufficed. *Gautt*, 487 U.S. at 1010-11. This case presents the occasion to apply the controlling legal standard that the Sixth Amendment and due process require notice to be given at the beginning of court proceedings, and not at the end of them.

Established precedent in *Application of Gault*, 387 U.S. 1 (1967), commands this result. In *Gault*, the Supreme Court reversed a state court's denial of habeas relief sought by a minor challenging his confinement pursuant to a juvenile court "delinquency" determination because the minor's constitutional right to notice, among others, had been violated. *Id.* at 31-34. Although sensitive to the distinctions between juvenile and adult criminal proceedings, the Court concluded that minors were not stripped of the "substantial rights under the Constitution" they would otherwise be afforded if they were "over 18" and facing charges. *Gault*, 387 U.S. at 29. Juvenile proceedings "must measure up to the essentials of due process and fair treatment." *Id.* at 31 (quoting *Kent v. United States*, 383 U.S. 541, 562 (1966)).

The Court squarely stated that "[n]otice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." [6] *Id.* at 33

---

[6] *Gault* makes plain that these rights originated in the specific guarantees in the Bill of Rights held to apply to the states by the Fourteenth Amendment's Due Process Clause, such as the right to notice, to counsel, to confrontation, to cross-examination, and against self-incrimination. *Gault,* 387 U.S. at 10, 13. The concurring Justices agreed the rights analyzed by the majority were rooted in the Bill of Rights' textual procedural guarantees. *See id.* at 59-61 (Black, J., concurring); *id.* at 64-65 (White, J., concurring).

(internal quotation omitted).    The minor's rights were violated because the Constitution "requires notice of the sort [the Court] described -- that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding." *Id.* at 33 (citing, *inter alia*, *Cole*, 333 U.S. 196).  Delaying notice of the charge until "a hearing on the merits" is patently "not timely," which is true "even if there were a conceivable purpose served by the deferral proposed by the court below." *Id.*  *Gault* thus relied upon, and so clearly established for purposes of AEDPA, the principle that, as part of "the essentials of due process and fair treatment," criminal defendants have a right to specific notice of the charges against them "sufficiently in advance" of a merits proceeding. *Id.* at 30, 33 (citation omitted).

The Court of Appeal unreasonably applied this precedent when it determined that Handley was given constitutionally adequate notice of the aggravated kidnapping for ransom charge in a whirlwind of jury instruction conferences at the tail end of his prosecution. *See Handley II*, 2021 WL 1138353, at *10-11.  Much of the ostensible "notice" was provided during the conference on January 3 that took place about two hours before the close of evidence and featured a variety of incorrect statements by the trial judge, as we have seen.    This cannot be constitutionally sufficient because *Gault* made plain that notice given at the *start* of an initial merits hearing was "not timely." *Gault*, 387 U.S. at 33; *see also Balbuena v. Sullivan*, 980 F.3d 619, 631-32 (9th Cir. 2020) (assessing reasonableness of state court ruling by comparing to prior Supreme Court rulings).  Whatever the outer boundary of *Gault* might be for notice being "sufficiently in advance" of a merits proceeding, notice at such a late stage here, when the jury trial of Handley was

effectively at an end, cannot be deemed adequate by any stretch of reasoning.

The state court gave substantial attention to whether Handley's case was similar to *People v. Anderson*, 9 Cal. 5th 946 (2020), but did not stop to consider the salient question of whether the ostensible notice to Handley was constitutionally adequate. It bears mention that none of the California state cases cited for support by the Court of Appeal held that notice, provided after the start of trial, of a different charge with greater penalties is constitutionally adequate. *See, e.g.*, *Anderson*, 9 Cal. 5th at 958-60; *People v. Sawyers*, 15 Cal. App. 5th 713, 722-26 (2017); *People v. Sandoval*, 140 Cal. App. 4th 111, 127-29, 132-34 (2006); *People v. Haskin*, 4 Cal. App. 4th 1434, 1439-40 (1992); *see also People v. Mancebo*, 27 Cal. 4th 735, 740-41, 751-53 (2002); *People v. Robinson*, 122 Cal. App. 4th 275, 282 (2004).

Respondent did not cite a decision of this Court which concluded that events occurring after the start of trial can provide adequate notice under the Sixth Amendment of a different offense carrying more severe penalties than the one formally charged. *See John-Charles v. California*, 646 F.3d 1243, 1250 (9th Cir. 2011) (looking to circuit precedent to see if a "fairminded" jurist could agree with the state court based on whether prior panels came to the same conclusion). As *Gautt* stated, our precedents concern either late-stage notice of a new theory by which the prosecution would seek to prove the previously charged offense, or a record of constitutionally sufficient pre-trial notice. *See Gautt,* 489 F.3d at 1009 (discussing cases); *see also Zanini v. Garrett*, No. 23-15397, 2024 WL 2379017 (9th Cir. May 23, 2024) (unpub.) (mid-trial amendment to add new facts to original allegations for the same offenses with the same elements);

*Cain v. Chappell*, 870 F.3d 1003, 1014-15 (9th Cir. 2017) (information alleged the factual basis for "the commission of rape" and cited the statute containing the "attempted rape special circumstance," which was a "lesser-included offense" (quoting *Gautt*, 489 F.3d at 1007)); *Cote v. Adams*, 586 F. App'x. 414, 415 (9th Cir. 2014) (unpub.).

Even so, the majority rejects Handley's argument under *Gault* by saying he "points to no Supreme Court precedent holding that notice provided through informal amendment of the information -- with the defendant's consent -- cannot satisfy the Sixth Amendment's notice requirement."

I see it differently. The notice requirement in *Gault* is a "general constitutional rule already identified in the decisional law [that] may apply with obvious clarity to the specific conduct in question." *Andrew*, 145 S. Ct. at 82 (quoting *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam)). We have stated that "a legal principle established by a Supreme Court decision" may not provide a "controlling legal standard" when "there is a 'structural difference' between the prior precedent and the case at issue, or when the prior precedent requires 'tailoring or modification' to apply to the new situation." *Moses v. Payne*, 555 F.3d 742, 754-55 (9th Cir. 2009) (citations omitted).

The majority does not say that the plain holding of *Gault* might entail such "tailoring or modification" to govern here, for good reason. The material question is the same -- did the notice come too late? -- and so the inquiry under AEDPA is "whether the application of that standard was objectively unreasonable, even if the facts . . . are not identical to the Supreme Court precedent." *Id.* (citation omitted). That Handley is said to have been given notice by means of an oral, informal amendment does not necessitate any tailoring

or modification.  The notices in *Gault* were given orally and then on paper.  *See* 387 U.S. at 5-6.

The majority's mention of consent is of no moment and does not pose a "structural difference" between *Gault* and this case.  *Moses*, 555 F.3d at 754 (citation omitted).  The petitioner and his family in *Gault* "appeared at the two hearings 'without objection.'"  *Gault*, 387 U.S. at 5-7, 32.  The Court could not have been clearer in stating that the "asserted failure to object does not excuse the lack of adequate notice."  *Id.* at 34 n.54.[7]  The fact that the petitioner was proceeding pro se does not pose a structural difference, as the majority suggests.  *Gault* certainly did not limit the right of "notice which would be deemed constitutionally adequate in a civil or criminal proceeding" to pro se litigants.  *Id.* at 33, n.53 (citing, *inter alia*, *Cole*, 333 U.S. 196, in which the defendants had counsel).  It bears mention that the Court of Appeal expressly declined to find that Handley waived or forfeited his constitutional claim.  *See Handley II*, 2021 WL 1138353, at *11-12, n.6.

## IV

Because Handley has established grounds for relief under Section 2254, and it is clear from the foregoing principles that his Sixth Amendment rights were violated, the remaining question is the proper remedy.  In my view, a violation of the Sixth Amendment right to adequate notice

---

[7] One looks in vain in the trial transcript for affirmative consent by Handley to "amendment of the information," as the majority would have it.  At most, the record shows, and the Court of Appeal so found, that Handley did not object to the jury instructions or verdict form after the trial judge told Handley that language would not increase his sentence.  Those are facts to which *Gault* "clearly extends."  *Moses*, 555 F.3d at 753.

of a criminal charge requires automatic reversal of the conviction without a showing of prejudice, for such an error is "structural."

A "constitutional error is either structural or it is not." *Neder v. United States*, 527 U.S. 1, 14 (1999). Structural errors "affect the framework within which the trial proceeds, and are not simply an error in the trial process itself." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (cleaned up) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)); *see McKinney v. Ryan*, 813 F.3d 798, 821 (9th Cir. 2015); *see also Puckett v. United States*, 556 U.S. 129, 141 (2009) (constitutional error is structural when it would "necessarily render a criminal trial fundamentally unfair" (citation omitted)). An error may also be structural when its effects are "too hard to measure," *Weaver v. Mass.*, 582 U.S. 286, 295 (2017), such that conducting a harmless-error analysis "would be a speculative inquiry," *Gonzalez-Lopez*, 548 U.S. at 150.

Although many constitutional errors can be harmless, *see Fulminante*, 499 U.S. at 306-07, a deprivation of the Sixth Amendment right to notice of a criminal charge is not. The Supreme Court has characterized the right to notice as "both 'basic in our system of jurisprudence' and as a 'principle of procedural due process' that is unsurpassed in its 'clearly established' nature." *Gautt*, 489 F.3d at 1015 (emphasis omitted) (first quoting *In re Oliver*, 333 U.S. at 273, then *Cole*, 333 U.S. at 201). Adequate notice is one of "the essentials of due process and fair treatment." *Gault*, 387 U.S. at 31 (quoting *Kent*, 383 U.S. at 562). *Apprendi* and *Alleyne* detailed the pivotal role that allegations in a charging document played in criminal prosecutions at common law. *See Apprendi*, 530 U.S. at 478-79; *Alleyne*, 570 U.S. at 109-11.

The "charging instrument *is* 'the framework within which the trial proceeds,' and forms the basis of the Government's proof, the accused's defense, and the trial court's rulings." *United States v. Lewis*, 802 F.3d 449, 462 (3d Cir. 2015) (en banc) (Smith, J., concurring, with whom McKee, Ambro, and Jordan, J.J., join) (emphasis in original) (citations omitted). Inadequate notice puts a defendant in the unfair position of proceeding through investigation, plea negotiations, and trial on an understanding of the offense and potential sentence that is completely different from what the prosecution ultimately demands in a verdict. This error "infect[s] the entire trial process," such that the process "cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder*, 527 U.S. at 8-9 (citation omitted); *see Puckett*, 556 U.S. at 141.

Respondent suggests that *Cotton* decided that notice errors are subject to harmless error analysis. But *Cotton* concerned a question not presented in this case, namely whether an arguably waived claim of the right to an indictment by a grand jury is reviewed for plain error. *Cotton,* 353 U.S. at 631-32. It expressly did not resolve the prejudice prong of plain error. *Id.* at 632; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 103-04 (2007). Overall, *Cotton* is not instructive here.

Respondent also says that harmless error review should apply because failures to submit an element to a jury under *Apprendi* and *Alleyne* are so reviewed. But harmless error analysis is appropriate in those circumstances because such an error does not "*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Washington v. Recuenco*, 548 U.S. 212, 219 (2006) (emphasis in original) (citations omitted). That is not the situation here. Adequate notice of

the crime being charged, and its attendant sentence, materially affects defense strategies from start to end.  *See Gonzalez-Lopez*, 548 U.S. at 150; *Lewis*, 802 F.3d at 463 (Smith, J., concurring).  Adequate and accurate knowledge of the charged crime and punishment determines "whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides to go to trial." *Gonzalez-Lopez*, 548 U.S. at 150.  Unlike the situation where a judge finds a particular fact instead of the jury, "determining 'what might have been'" when a defendant and her counsel were deprived of adequate notice of the ultimate charge and penalty at stake "is an exercise in rank speculation."  *Lewis*, 802 F.3d at 463 (Smith, J., concurring); *see Weaver*, 582 U.S. at 295-96; *Gonzalez-Lopez*, 548 U.S. at 150.

This fits Handley's case to perfection.  Handley states, and Respondent does not contest, that individuals sentenced to LWP are eligible for parole in seven years in California. *See* Cal. Pen. Code § 3046(a)(1) (2024).  Handley received that sentence for the mayhem and torture counts.  If Handley had been found guilty of simple kidnapping for ransom, as alleged in the operative information, there was a possibility he would serve between seven and twenty-eight years in prison for all counts before being paroled.  *See id.* §§ 3046(a), (b).  The calculus of whether to plea bargain or go to trial is obviously quite different when life in prison without parole is on the table.  Consequently, a harmless error approach is not reasonable here.  It would necessarily entail a "speculative inquiry into what might have occurred in an alternate universe."  *Gonzalez-Lopez*, 548 U.S. at 150.

## V

I would reverse the denial of habeas relief in this circumstance and remand with instructions to issue a conditional writ of habeas corpus directing the vacatur of Handley's convictions and sentences on the kidnapping for ransom charges unless he is retried within 120 days. The Sixth Amendment demands no less than that.